# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

| | |
|---|---|
| DAVID MICHAEL SLAUGHTER, | |
| Plaintiff, | CIVIL ACTION NO.: 5:15-cv-90 |
| v. | |
| GEORGIA DEPARTMENT OF CORRECTIONS; HOMER BRYSON; TOM GRAMIAK; JOHN BOYETT; EDWINA JOHNSON; LT. CROSBY; SGT. NUNN; MR. KICKLIGHTER; MR. SWARDS; MR. STEWART; NURSE BRAD; and UNIDENTIFIED FEMALE CONTRACT NURSE,[1] | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Ware State Prison in Waycross, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. (Doc. 1.) Plaintiff also filed a Motion for a Temporary Restraining Order. (Doc. 9.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS:** (1) Plaintiff's Section 1983 claims for monetary damages against Defendants in their official capacities; (2) all claims against Defendants Bryson and Boyett; (3) his stand-alone verbal threats claims against all Defendants; and (3) his retaliation claims against all Defendants except Defendants Gramiak and Johnson. I further **RECOMMEND** that the Court **DENY** Plaintiff's requests for injunctive relief and Motion for a Temporary Restraining Order.

---

[1]  The Clerk of Court is **DIRECTED** to amend the caption of this case to reflect the proper spelling of Defendant Tom Gramiak's name.

However, as laid out below, Plaintiff states plausible claims for violations of the Americans with Disabilities Act against the Georgia Department of Corrections. Accordingly, the Court **DIRECTS** the Clerk of Court to **AMEND** the caption of this case to add the Georgia Department of Corrections as a Defendant. Additionally, Plaintiff arguably asserts viable claims under 42 U.S.C. § 1983 against Defendants Tom Gramiak, Edwina Johnson, Lt. Crosby, Sgt. Nunn, Mr. Kicklighter, Mr. Swards, Mr. Stewart, Nurse Brad, and an Unidentified Female Contract Nurse.[2] Thus, the Court **DIRECTS** the United States Marshal to serve these nine Defendants and the Georgia Department of Corrections with a copy of Plaintiff's Complaint, (doc. 1), and this Order.

## BACKGROUND[3]

On February 28, 2015, Defendant Sergeant Nunn and Defendant Correctional Officers Stewart, Kicklighter, and Swards approached Plaintiff, a disabled person, in his dormitory. (Doc. 1, p. 5.) According to Plaintiff, these four Defendants jerked him away from his walking impairment device and placed him in handcuffs, causing him to have a seizure. (Id.) Plaintiff woke from the seizure in the prison's infirmary, where prison staff had placed restraints on his arms and legs. (Id.) According to Plaintiff, these four Defendants then choked, kicked, punched, and verbally abused him. (Id.) Plaintiff claims that a male and female nurse mocked him during the incident and failed to intervene or provide medical care. (Id.) Plaintiff contends that he was

---

[2] Though Plaintiff has not provided the full name for many Defendants, the United States Marshal will use reasonable efforts to identify these Defendants and serve them promptly. The Court **DIRECTS** the named Defendants, including the Georgia Department of Corrections, to assist the United States Marshal in identifying the remaining defendants and having them served. However, it is ultimately Plaintiff's responsibility to provide the Court with sufficient information for the Defendants to be served. Moreover, as laid out below, Plaintiff is given seventy-five days from the first Answer of a Defendant to amend his Complaint to provide the Court with the full name of the unidentified female nurse.

[3] The Court takes the following facts from Plaintiff's Complaint and construes them as true, as it must at this stage.

then placed in solitary confinement without receiving medical care for his injuries. (Id.) Plaintiff claims that, as a result of Defendants' attack, he had a swollen groin and bruising throughout his body, including visible handprints around his throat. (Id. at p. 6.)

He also alleges that prison staff retaliated against him after he filed grievances pertaining to the attack. (Id.) Specifically, Plaintiff claims that he is now forced to use his walker on unsafe walkways, and that staff warn him daily that he will "get what's coming" to him and threaten him with death. (Id.) He claims that he has complained of this conduct to Defendants Gramiak and Johnson but that they have ignored his requests for assistance. In his Complaint, Plaintiff seeks both monetary and injunctive relief. (Doc. 1, p. 8.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See

Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse

mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.    Plaintiff's Claims Under the Americans With Disabilities Act

Though Plaintiff does not describe his medical impairments with clarity, both before and after the assault, he has required a walker with wheels to assist him with walking. (Doc. 1, pp. 5–6.) Additionally, he indicates that he has a seizure disorder. Id. He contends that, partly as a result of his complaining about the assault, he has been required to walk in unsafe areas that do not comply with the Americans with Disabilities Act ("ADA"). (Id. at p. 6.) He states that these areas include walkways with large cracks below and screws protruding from overhead. Id. He states that as a result, he has fallen and injured his head. Id. He states that he is forced to stay inside to avoid waking in unsafe conditions. Id.

Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. See 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). State prisons are public entities for purposes of the ADA. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). To state a claim of discrimination under Title II, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami–Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007). Public entities must make reasonable modifications to their policies, practices, or procedures when necessary to avoid discrimination on the basis of a disability unless making the modifications would "fundamentally alter the nature of the service[s], program[s], or activit[ies]." 28 C.F.R. § 35.130(b)(7).

A disability is "a physical or mental impairment that substantially limits one or more major life activities," including walking, caring for oneself, concentrating, or thinking. 42 U.S.C. § 12102(1)(A), (2)(A). A qualified individual with a disability is someone who has a disability and "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity," with or without reasonable modifications. 42 U.S.C. § 12131(2).

Plaintiff has plausibly alleged that he is disabled. 42 U.S.C. § 12102(1)(A) (a "disability" includes a physical impairment that "substantially limits one or more major life activities" including "walking."). Furthermore, Plaintiff states that Defendants have failed to accommodate this disability by, among other things, failing to provide him medical care and providing unsafe walking areas that he cannot traverse without falling. See Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (an ADA claim may proceed on the theory that the Defendant failed to reasonably accommodate the Plaintiff's disability). Accordingly, given his pro se status, the Court finds that Plaintiff has made sufficient allegations to state a plausible claim that prison officials have violated the ADA as to him.

Having determined that Plaintiff has stated a plausible ADA claim, the Court must next turn to the proper Defendant for these claims. Plaintiff cannot bring a claim under Title II of the ADA against prison staff and officials individually. Owens v. Sec'y, Florida Dep't of Corr., 602 F. App'x 475, 478 (11th Cir. 2015) ("Since only public entities may be liable under the ADA,

[plaintiff] fails to state ADA claims against [prison officials] in their individual capacities."). Furthermore, an ADA claim against Defendants in their official capacities would in essence be a claim against the Georgia Department of Corrections. Id. However, unlike Section 1983, Title II of the ADA abrogates state sovereign immunity, at least insofar as the Act creates a private cause of action against the States for conduct that violates both the ADA and the Fourteenth Amendment. United States v. Georgia, 546 U.S. 151 (2006); Black v. Wigington, No. 15-10848, 2016 WL 278918, at *8 (11th Cir. Jan. 22, 2016). The Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment and the First Amendment's protection against retaliation for protected speech and applies them to State and local governments. Gitlow v. New York, 268 U.S. 652, 666 (1925); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463 (1947); Foley v. Orange Cty., No. 14-10936, 2016 WL 361399, at *3 (11th Cir. Jan. 29, 2016) ("The First Amendment applies to state and local governments by its incorporation through the Due Process Clause of the Fourteenth Amendment.") Thus, as Plaintiff plausibly alleges that Defendants' actions that violated the ADA also violated the First and Eighth Amendments, the Department of Corrections is not immune from his ADA claims for monetary relief. Furthermore, immunity does not shield the Department of Corrections from Plaintiff's ADA claims seeking declaratory and injunctive relief. Miller v. King, 384 F.3d 1248, 1264 (11th Cir. 2004), *vacated and superseded on other grounds*, 449 F.3d 1149 (11th Cir. 2006) (applying the Ex Parte Young doctrine and holding that "the Eleventh Amendment does not bar ADA suits under Title II for prospective injunctive relief against state officials in their official capacities."); Lonergan v. Fla. Dep't of Corr., 623 F. App'x 990, 992 (11th Cir. 2015) (plaintiff properly sought declaratory and injunctive relief against the

Secretary of the Florida Department of Prisons).  Accordingly, the Georgia Department of Corrections is the proper Defendant for Plaintiff's ADA claims.

For these reasons, Plaintiff's ADA claims will proceed against the Georgia Department of Corrections.  To that end, the Clerk of Court is **DIRECTED** to add the Georgia Department of Corrections as a Defendant in this case.

## II.    Plaintiff's Claims Under 42 U.S.C. § 1983

### A.  Claims Against Defendants for Monetary Damages in their Official Capacities

It is not clear if Plaintiff intends to sue Defendants in their individual and official capacities.  However, Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983.  Id. at 71.  Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution.  Accordingly, the Eleventh Amendment immunizes these actors from suit for monetary damages in their official capacities.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for monetary damages against Defendants in their official capacities.  Therefore, his Section 1983 claims for monetary relief against Defendants in their official capacities should be **DISMISSED**.

**B. Section 1983 Supervisory Liability Claims Against Defendants Bryson and Boyette**

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[4] Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears that Plaintiff has named Homer Bryson, the Commissioner of the Georgia Department of Corrections, and John Boyett, the Deputy of Security at Ware State Prison as Defendants based solely on their supervisory positions.[5] Plaintiff does not mention these

---

[4] The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129–30 (11th Cir. 1992).

[5] Plaintiff has also named Tom Gramiak, the Warden of Ware State Prison, and Edwina Johnson, the Deputy Warden of Care and Treatment at Ware State Prison, as Defendants. He has not alleged that these Defendants were personally involved in the beating. However, he has alleged that they have "ingor[ed] all [of his] pleas for assistance." Thus, the Court will not dismiss them at this early stage. However, Plaintiff is forewarned that he cannot hold these Defendants liable on a theory of respondeat superior. Moreover, "[a]n allegation that prison officials denied grievances does not 'support a finding of constitutional violations on the part of' those defendants." Bennett v. Sec'y, Fla. Dep't of Corr., No. 4:12CV32-MP/CAS, 2012 WL 4760856, at *1 (N.D. Fla. Aug. 27, 2012), report and recommendation adopted, No. 4:12-CV-00032-MP-CAS, 2012 WL 4760797 (N.D. Fla. Oct. 2, 2012) (quoting Raske v. Dugger, 819 F. Supp. 1046, 1054 (M.D.Fla. 1993)); see also Ludy v. Nelson, No. 5:14-CV-73-MTT-

Defendants in his statement of claim, much less allege that Defendants Bryson or Boyett were personally involved in, or otherwise causally connected to, the alleged violations of his constitutional rights. Consequently, the Court should **DISMISS** all claims against Defendants Bryson and Boyett.

### C.    Excessive Force Claims

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the

---

CHW, 2014 WL 2003017, at *3 (M.D. Ga. Apr. 18, 2014), report and recommendation adopted, No. 5:14-CV-73 MTT, 2014 WL 2003096 (M.D. Ga. May 15, 2014) ("However, the mere fact that a prison official denies a grievance is insufficient to impose liability under § 1983.") (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009), and Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005)).

need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff has made sufficient allegations to state a plausible claim that Defendants Nunn, Kicklighter, Swards, and Stewart used excessive force against him. He alleges that these Defendants jerked him away from his walking impairment device, handcuffed him, restrained him in the prison infirmary, and proceeded to beat him without any provocation or other reason. (Doc. 1, pp. 5, 7.) Accordingly, his excessive force claims against these four defendants survive frivolity review.

**D.     Failure to Intervene Claims**

"[A]n officer can be liable for failing to intervene when another officer uses excessive force." Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]" (alterations in original) (citing Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998))). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Id.; see also Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (explaining that a direct failure to intervene claim "requir[es] the allegations to include facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct"). However, if there is no underlying use of excessive force, another officer has no obligation to intervene. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009).

Plaintiff alleges that a male nurse named "Brad" and an unidentified female nurse were present and mocked him during Defendants' attack. (Doc. 1, p. 5.) Construing Plaintiff's Complaint liberally, he has arguably stated a plausible failure to intervene claim against Defendant nurses.

The Court notes that Plaintiff does not know the name of the female nurse that allegedly mocked him and failed to intervene. Accordingly, the Court **DIRECTS** Plaintiff to amend his Complaint **no later than seventy-five (75) days** after the date that any Defendant serves Plaintiff with an Answer. In that Amended Complaint, Plaintiff shall identify the female nurse. This will allow Plaintiff a period of time to conduct discovery into the identity of this Defendant.[6] The Court expects that the other Defendants and their counsel will cooperatively participate in discovery to expedite the effort to identify the female nurse that allegedly failed to intervene. However, Plaintiff must initiate this discovery effort, and any failure to timely identify this Defendant will result in the dismissal of claims against her.

### E. Deliberate Indifference Claims

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth

---

[6] The Court does not intend that initial discovery shall be limited solely to the identity of the proper defendants. However, this should be a key topic of early discovery.

Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347. However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987); see also Gholston v. Humphrey, No. 5:12-CV-97-MTT-MSH, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113-058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit). [7]

Here, Plaintiff does not assert claims merely based on being placed in administrative segregation. Rather, Plaintiff asserts three Defendants violated his Eighth Amendment rights through the denial of medical care and by subjecting him to unsafe walking conditions that cause him to fall.

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates. Farmer, 511 U.S. at 828. This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway,

---

[7] The Court notes "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). However, absent such interaction, the Court need not consider each condition as part of the overall conditions challenged on an Eighth Amendment claim." Id. at 305 ("To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.).

352 F.3d 1346, 1349 (11th Cir. 2003) (citing <u>Farmer</u>, 511 U.S. at 828).  In order to prevail on

such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious

harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal

connection between the defendant's acts or omissions and the alleged constitutional deprivation.

<u>Id.</u>

      "To be deliberately indifferent a prison official must know of and disregard 'an excessive

risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference.'"  <u>Id.</u> (quoting <u>Purcell v. Toombs Cty.</u>, 400 F.3d 1313, 1319–20 (11th Cir. 2005)).

Whether a substantial risk of serious harm exists so that the Eighth Amendment might be

violated involves a legal rule that takes form through its application to facts.  However, "simple

negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous

indifference to a prisoner's rights."  <u>Smith v. Reg'l Dir. of Fla. Dep't of Corr.</u>, 368 F. App'x 9,

14 (11th Cir. 2010).  In other words, "to find deliberate indifference on the part of a prison

official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2)

disregard of that risk; (3) by conduct that is more than gross negligence."  <u>Thomas v. Bryant</u>, 614

F.3d 1288, 1312 (11th Cir. 2010).

      A medical need is serious if it "has been diagnosed by a physician as mandating

treatment or [is] one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention."  <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007)

(quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)) (internal

quotation marks omitted).  Inadvertent failure to provide adequate medical care, negligence in

diagnosis or treatment, or medical malpractice, without more, fails to state a cognizable

deliberate indifference claim.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 105–06 (1976).  "An objectively insufficient response by public officials to a serious medical need must be poor enough to constitute an unnecessary and wanton infliction of pain."  <u>Loeber v. Andem</u>, 487 F. App'x 548, 549 (11th Cir. 2012); <u>See</u> <u>Estelle</u>, 429 U.S. at 104.

In his Complaint, Plaintiff contends that the assault caused him to suffer a swollen groin and bruising throughout his body, including visible handprint marks around his throat.  (Doc. 1, p. 6.)  Because a lay person could easily recognize the necessity of a doctor's attention to extensive physical wounds, these injuries are sufficiently serious.  Accepting Plaintiff's allegations as true, Defendants Nunn, Stewart, Kicklighter, and Swards intentionally ignored these injuries and left Plaintiff shackled in a holding cell for two hours following their attack of Plaintiff.  (<u>Id.</u> at p. 7.)  Further, Plaintiff contends that Defendant nurses witnessed the attack, yet mocked him instead of providing medical care after he sustained injuries.  (<u>Id.</u> at p. 6.)  Therefore, Plaintiff has stated a plausible claim that Defendant nurses knew of and disregarded a risk of serious harm to Plaintiff by intentionally failing to treat his injuries.  Plaintiff also claims Defendants Gramiak and Johnson ignored his "pleas for assistance" and that he "raised these allegations . . . [to] [a]dministrative officials" but maintains that they were not "willing to even open up [his] cell to get a visual of [his] injuries[.]"  (Doc. 1, p. 6.)  Accordingly, Plaintiff has stated a plausible claim that Defendants Gramiak, Johnson, Nunn, Stewart, Kicklighter, Swards, Nurse Brad, and the Unidentified Female Nurse,  knew of and disregarded Plaintiff's serious needs for medical care.  Accordingly, these claims against these eight Defendants shall survive frivolity review.

Plaintiff also plausibly alleges that prison officials have subjected him to dangerous prison conditions, including unsafe walkways, that pose a readily apparent substantial risk of

serious harm given his physical impairments. Plaintiff does not specifically allege which Defendants were aware of and disregarded these dangerous conditions. However, these claims are tangentially related to his other claims as he contends he was subjected to these conditions as a result of the assault. Furthermore, the factual basis for these claims will likely mirror in large part his ADA claims. Accordingly, at this early stage, the Court will not dispose of Plaintiff's claims that prison officials have violated the Eighth Amendment by subjecting him to unsafe conditions including walkways that cause him to fall and hurt his head. These claims will proceed against Defendants Gramiak, Johnson, Nunn, Stewart, Kicklighter, Swards, Nurse Brad, and the Unidentified Female Nurse. However, Plaintiff is forewarned that in order to maintain these claims, he will have to show some personal involvement or other causal connection between Defendants and the allegedly dangerous condition.

### F. Verbal Threats

Plaintiff asserts that after the attack, prison staff verbally threatened him with death and told him daily that he will "get what's coming to him." (Doc. 1, p. 6.) However, Plaintiff does not identify who has made these post attack threats or any assertion that any of the Defendants have attempted to act on these threats. In a similar context, the Eleventh Circuit has affirmed the dismissal of claims based on prison officials' threats "because the defendants never carried out these threats." Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)). The Court further held that "verbal abuse alone is insufficient to state a constitutional claim." Id. Accordingly, Plaintiff's stand-alone claims that Defendants violated his constitutional rights by making unfulfilled verbal threats should be **DISMISSED**.

### G.    Retaliation

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).  It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)).  "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant, 637 F.3d at 1212.  "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff's filing of grievances is constitutionally protected speech.  Additionally, Plaintiff arguably asserts that a prisoner of "ordinary firmness" may have been deterred from exercising his First Amendment rights based on prison officials' actions.  Bennett, 423 F.3d at 1252 (noting "adverse effect" depends on the context of the alleged action and focuses on "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts[ ]") (citing Thaddeus–X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999)).  He states that he has received death threats, been reminded that he will

"get what his coming" to him, and been forced to endure unsafe conditions. (Doc. 1, p. 6.) Furthermore, Plaintiff's allegation that this harassment began after he filed grievances demonstrates a causal relationship between his constitutionally protected speech and Defendants' actions. However, Plaintiff has not identified which individuals allegedly harassed him. Construing his statement that Gramiak and Johnson have ignored his pleas for assistance broadly, the Court will presume that Plaintiff has notified these two Defendants that prison officials are retaliating against him, that these Defendants failed to intervene to stop that retaliation, and that the relation has continued. Accordingly, his retaliation claims will proceed against Gramiak and Johnson. However, his retaliation claims should be dismissed as to all other Defendants.

III.    **Motion for Temporary Restraining Order**

Plaintiff has filed a Motion for a Temporary Restraining Order. (Doc. 9.) Therein, he states that he continues to be harassed by prison staff for filing grievances regarding the physical assault. Id. Plaintiff requests, as he does in his Complaint, that he be transferred to another facility. Id.

To be entitled to a preliminary injunction or a temporary restraining order, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the

'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982). Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to an injunction or temporary restraining order. Specifically, Plaintiff has not shown the likelihood of success on the merits of his claims or that injunctive relief is necessary to prevent irreparable injury. Furthermore, because Plaintiff's request for a transfer involves Plaintiff's housing placement–a matter squarely within the realm of prison administration–an order or injunction granting such relief on this record would be broader and more intrusive than necessary to remedy any potential constitutional violation. This is not to say that Plaintiff will not be able to ultimately obtain some form of injunctive relief in this case. However, he has not made the

requisite showing at this time to obtain the extraordinary relief he currently seeks. Therefore, the Court should **DENY** his Motion for a Temporary Restraining Order.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendants in their official capacities, stand-alone verbal threats claims, supervisory liability claim against Defendant Bryson, and deliberate indifference to harassment claims against Defendants Gramiak and Johnson. I further **RECOMMEND** that the Court **DENY** Plaintiff's Motion for a Temporary Restraining Order and request for injunctive relief.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

As stated above, Plaintiff's allegations in his Complaint arguably state the following colorable claims against the following Defendants:

- Americans with Disabilities Act claims against the Georgia Department of Corrections;

- Constitutional claims for excessive force against Defendants Nunn, Kicklighter, Swards, and Stewart;

- Constitutional claims for failure to intervene against a male nurse named "Brad" and the Unidentified Female Nurse;

- Constitutional claims for deliberate indifference against Defendants Gramiak, Johnson, Nunn, Stewart, Kicklighter, Swards, Nurse Brad, and the Unidentified Female Nurse;

- Constitutional claims for retaliation against Defendants Gramiak and Johnson.

Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon these remaining Defendants by the United States Marshal without prepayment of cost. The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will

first mail a copy of the complaint to the Defendant by first-class mail and request that the defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or his counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq.* The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes

of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a Defendant. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete

responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants'

motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 4th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA