# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

DAVID MICHAEL SLAUGHTER,

     Plaintiff,

  v.

HOMER BRYSON, et al.,

     Defendants.

CIVIL ACTION NO.: 5:15-cv-90

---

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 *et seq.*, contesting certain conditions of his confinement while he was incarcerated at Ware State Prison ("WSP") in Waycross, Georgia. (Doc. 1.) Plaintiff also filed a Supplemental Complaint, (doc. 17), and two pending Motions to Supplement his Complaint, (docs. 25, 30). After the Court conducted its frivolity review, (docs. 12, 29), Defendants filed a Motion to Dismiss, (doc. 41), to which Plaintiff filed a Response, (doc. 46), and Defendants filed a Reply, (doc. 52).[1]

For the reasons which follow, the Court **DENIES** Plaintiff's second and third Motions to Supplement his Complaint, (docs. 25, 30). The Court should **DISMISS as moot** all claims for

---

[1] Defendants filed their Motion to Dismiss only as to Defendants Gramiak, Johnson, Crosby, Nunn, Kicklighter, Brad, Pratt, Cox, Adams, Jenkins, and the Georgia Department of Corrections. (Doc. 41; Doc. 41-1, p. 1.) Defendants' Motion was not filed on behalf of Defendants Bennett, Stewart, Swards, and Ritter because they had yet to be served at the time of filing. (Doc. 41-1, p. 1 n.1.) Defendants Bennett, Stewart, and Swards have since been served, (docs. 55, 56, 54), but no separate motion to dismiss or amendment to this Motion has been filed on their behalf. Accordingly, although the allegations against them will be noted in the Background section, this Report and Recommendation does not apply to these newly-served Defendants. The Court refers to the moving Defendants collectively as "Defendants".

injunctive relief as to Plaintiff's unsafe walkway allegations.  Further, the Court should **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss.  (Doc. 41).   Specifically, I **RECOMMEND** the Court:

- **GRANT** Defendants' Motion to Dismiss Plaintiff's claims against Defendants Ritter, Pratt, Cox, Adams, and Jenkins and **DISMISS without prejudice** all claims alleged against these Defendants, because Plaintiff failed to exhaust his administrative remedies as to those claims;

- **DENY** Defendants' Motion to Dismiss Plaintiff's claims against Defendants Georgia Department of Corrections ("GDC"), Nunn, Kicklighter, Brad, Gramiak, and Johnson premised on a failure to exhaust;

- **DENY** Defendants' Motion to Dismiss Plaintiff's claims on abandonment grounds;

- **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment failure to intervene claim against Defendant Brad based on his inaction during the alleged assault but **DISMISS** this claim because Defendant Brad is entitled to qualified immunity on this claim;

- **DENY** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Nunn, Kicklighter, and Brad based on their failure to provide medical care following the alleged assault;

- **GRANT** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Gramiak and Johnson and **DISMISS** those claims for failure to state a claim;

- **DENY** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference to health and safety claims against Defendants Gramiak and Johnson based on Plaintiff's unsafe walkway allegations but **DISMISS as moot** Plaintiff's claims for injunctive relief as to the walkway;

- **GRANT** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment deliberate indifference to health and safety claims against Defendants Nunn, Kicklighter, and Brad and **DISMISS** those claims for failure to state a claim;

- **DENY** Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation/failure to stop claims against Defendants Gramiak and Johnson based on their inaction to the allegations of retaliation; and

- **DENY** Defendant's Motion to Dismiss Plaintiff's ADA claims against Defendant GDC regarding the unsafe walkway but **DISMISS as moot** Plaintiff's claims for injunctive relief as to the walkway.

Additionally, in the March 4, 2016 Report and Recommendation, the Court observed potentially viable claims against Lt. Crosby, (doc. 12, p. 2); however, upon further examination, no viable claims have been asserted against Defendant Crosby. Accordingly, I **RECOMMEND** the Court **DISMISS** Defendant Crosby as a named Defendant. Should the Court adopt these recommendations as the opinion of the Court, I also **RECOMMEND** that the Court **DENY** Plaintiff *in forma pauperis* status on appeal as to the dismissed claims.

## BACKGROUND[2]

Plaintiff filed this action on November 17, 2015, regarding events that occurred on and after February 28, 2015. (Doc. 1.) On that date, Defendant Sergeant Nunn and Defendant Correctional Officers Stewart, Kicklighter, and Swards allegedly removed Plaintiff, a disabled person, from his dormitory, jerking him away from his walking impairment device and causing him to have a seizure. (Id. at p. 5.) Plaintiff awoke from the seizure restrained in the prison's infirmary; then these four Defendants physically battered and verbally assaulted him in the presence of Defendant Nurses Brad and Bennett. (Id. at pp. 5–6; Doc. 16.) Defendants Brad and Bennett also verbally assaulted Plaintiff during the incident and failed to intervene or provide medical care afterwards. (Doc. 1, pp. 5–7.) Plaintiff contends that he was then shackled in a solitary confinement holding cell without receiving medical care for his resulting injuries, which included a swollen groin, bruising throughout his body, and visible handprints around his throat. (Id.) Plaintiff further avers that unnamed administrative officials refused to "even open up [his] cell to get a visual of [his] injuries." (Id.)

Plaintiff also alleges that prison staff retaliated against him after he filed grievances pertaining to the attack. (Id.) Specifically, Plaintiff claims that he is now forced to use his

---

[2] The Court takes the following facts from Plaintiff's Complaint, accepts them as true, and construes them in Plaintiff's favor, as it must at this stage.

walker on an unsafe walkway, and that staff warn him daily he will "get what's coming" to him and threaten him with death. (Id.) Plaintiff also states that he remains in the building to avoid threats and being forced to use the unsafe walkway, (id.), and that he has been threatened with solitary confinement for complaining about the unsafe walkway, (doc. 17, p. 3). Plaintiff asserts that he has complained of this retaliatory conduct and unsafe walkway to Defendants Warden Gramiak and Deputy Warden Johnson, but they have ignored his "pleas for assistance." (Doc. 1, p. 6; Doc. 17, pp. 1, 3.) Plaintiff seeks both monetary and injunctive relief. (Doc. 1, p. 8.)

After conducting frivolity review, I directed service of Plaintiff's Complaint on Defendants by Order dated March 4, 2016. (Doc. 12.) In that Order, the Court found, *inter alia*, that Plaintiff had stated colorable claims under Title II of the ADA regarding an allegedly unsafe walkway with large cracks and protruding screws that Plaintiff is unable to safely traverse with his walker. (Doc. 12, pp. 5–8; see Doc. 1, pp. 5–6.) The Court then directed the Clerk of Court to add the GDC as a Defendant because ADA Title II claims are only cognizable against public entities, and Plaintiff had not named the GDC in his Complaint.[3]

In addition to the ADA claims, the Court found that Plaintiff had stated viable constitutional claims for: excessive force against Defendants Nunn, Stewart, Kicklighter, and Swards; failure to intervene against Defendants Brad and Bennett; deliberate indifference against Defendants Gramiak, Johnson, Nunn, Stewart, Kicklighter, Swards, Brad, and Bennett; and retaliation against Defendants Gramiak and Johnson. (Doc. 12, p. 21.)[4]

---

[3] Although Plaintiff did not directly invoke the ADA, the Court found that, given Plaintiff's *pro se* status, he had stated sufficient allegations of plausible ADA violations as to him. (Doc. 12, p. 6.)

[4] In the accompanying Report, I recommended that Plaintiff's claims against Defendants Bryson and Boyett be dismissed for failing to state viable supervisory liability claims. (Doc. 12, pp. 9–10.) Pursuant to Judge Lisa Godbey Wood's May 11, 2016 Order, (doc. 29, p. 2), the Court **DIRECTS** the Clerk of Court to terminate Bryson and Boyett as named Defendants upon the record and docket of this case.

Subsequently, Plaintiff filed a Motion to Supplement Complaint, (doc. 17), which the Court granted, (doc. 29), and two additional Motions to Supplement his Complaint, (docs. 25, 30),[5] which the Court has yet to adjudicate. Each of these supplemental filings concerns alleged retaliatory conduct that occurred after Plaintiff filed his Complaint on November 17, 2015. In his first Motion to Supplement, which the Court granted, Plaintiff alleges that Defendant Ritter,[6] a new Defendant, placed him in solitary on February 2, 2016, as retaliation for filing this Complaint and related grievances. (Doc. 17, p. 1.) He also alleges that, between March 14 and March 17, 2017, Defendants Pratt, Cox, Adams, and Jenkins—all of whom are new Defendants—retaliated against him by forcing him to use the alleged ADA-deficient walkway and threatening him with solitary confinement if he refused. (Id. at pp. 2–3.)

In his second Motion to Supplement, Plaintiff alleges additional retaliatory conduct by Defendant Ritter, including issuance of frivolous disciplinary reports, placement of Plaintiff in solitary confinement, and unwarranted cell searches. (Doc. 25, p. 1.) Further, Defendant Ritter allegedly told Plaintiff that he had a "bullseye on his back" because of his grievances and lawsuit. (Id.) Plaintiff also makes allegations of physical threats and racial epithets against William Steedly, a proposed new Defendant. (Id. at pp. 1–2.) Finally, in his third Motion to Supplement, Plaintiff alleges, yet again, more retaliatory conduct by Defendant Ritter as well as additional retaliatory conduct by Defendants Adams and Jenkins. (Doc. 30.) Specifically, Plaintiff contends that Defendants Ritter and Adams made five unwarranted cell and locker searches between the dates of April 19, 2016 and May 12, 2016, culminating with the May 12

---

[5]  These pleadings were not properly docketed as motions. See Fed. R. Civ. P. 15(d) (supplemental pleadings are made "on motion"). Accordingly, the Court **DIRECTS** the Clerk of Court to amend the docket for Document Numbers 25 and 30 so that they are accurately cast as motions.

[6]  The Court acknowledges that Defendant Ritter has yet to be served after previously finding that Plaintiff alleged viable claims against her, (doc. 29, p.6), but, for the reasons discussed in Section I.D.1, *infra,* the Court **DIRECTS** the United States Marshal to not perfect service on Defendant Ritter.

locker search that left his Section 1983 legal research damaged with apple jelly. (Id. at pp. 1–2.) Plaintiff also alleges continued racial epithets by Defendants and disclosure of Plaintiff's convictions by Defendants Ritter and Jenkins that has endangered his safety. (Id.)

On June 3, 2016, Plaintiff filed a Motion for Declaratory Judgment in which he alleged much of the same retaliatory conduct that he complains about in his supplemental complaint filings. (Doc. 31.) Because Plaintiff failed to show he would likely receive a favorable decision in this case, I recommended that the Court deny Plaintiff's Motion for Declaratory Judgment. (Doc. 37, p. 4.) The Court adopted this recommendation and denied Plaintiff's Motion by Order dated October 24, 2016. (Doc. 44.) Defendants filed their Motion to Dismiss on October 3, 2016. (Doc. 41.) Defendants' Motion to Dismiss raises several doctrines of law, which the Court discusses as follows.

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). *Pro se* filings are to be construed liberally, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Nevertheless "[a] pleading that offers labels and conclusions

or a formulaic recitation of the elements of a cause of action" does not suffice. <u>Ashcroft</u>, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. <u>Id.</u>

## DISCUSSION

In their Motion, Defendants set forth several grounds for dismissal of Plaintiff's Complaint. First, Defendants contend Plaintiff failed to properly exhaust his available administrative remedies prior to the filing of his Complaint. (Doc. 41-1, pp. 8–13). Second, Defendants argue that Plaintiff fails to set forth plausible retaliation, failure to intervene, unsafe conditions of confinement, ADA, and deliberate indifference to a serious medical need claims. (Doc. 41-1, pp. 13–30.) Finally, Defendants maintain they are entitled to qualified immunity as to Plaintiff's retaliation, failure to intervene, conditions of confinement, and deliberate indifference claims, and that they are entitled to sovereign immunity as to Plaintiff's ADA claim.[7] (Doc. 41-1, pp. 31–35.) Plaintiff opposes these contentions. (Doc. 46.)

## I.     Exhaustion of Administrative Remedies

As set forth below, I agree that, as to the three supplemental complaint filings and attendant claims, Plaintiff failed to exhaust his administrative remedies prior to the filing of his

---

[7] Notably, Defendants do not move to dismiss Plaintiff's excessive force claim on either failure to state a claim or qualified immunity grounds. (Doc. 41-1, p. 34 n.22.)

Complaint, and Defendants' Motion is due to be granted in part on this basis. Further, while I agree that Plaintiff failed to exhaust his administrative remedies as to Grievance Numbers 196772 and 207489, I find that Plaintiff has exhausted his administrative remedies as to the claims in his Complaint that stem from Grievance Number 197941. Thus, for the reasons which follow, Defendants' Motion to Dismiss on exhaustion grounds is due to be denied as to these claims.

### A.   Standard of Review for Exhaustion

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue

of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### B. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at1378 ("To exhaust administrative remedies in accordance with the PLRA [(Prison Litigation Reform Act)], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Meadows, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

## C.    The GDC's Grievance Procedure

The GDC's grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. (Doc. 41-3.) This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance. (Id. at p. 4.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that

affects the [inmate] personally." (Id. at p. 5.)  Grievances must be limited to a single issue or incident, and an inmate is limited to two simultaneously active grievances.  (Id. at pp. 6, 7.) Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender.  (Id. at p. 4.)  An inmate must submit a grievance form "no later than 10 <u>calendar</u> days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 7 (emphasis in original).)  A "calendar day" is "a 24 hour time period from midnight to midnight Monday through Sunday." (Id. at p. 2.)  The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any Counselor.  (Id. at p. 7.)  The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator.  (Id.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it.  (Id. at pp. 7–8.)  The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond.  (Id. at p. 9.)  An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired.  (Id. at pp. 9–10.)  An inmate can file an appeal with the Commissioner's Central Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired.  (Id. at pp. 10–11.)  The inmate has seven (7) calendar days in which to file this appeal.  (Id. at p. 11.) The Commissioner has one-hundred (100) calendar days after receipt to render a decision.  (Id.) These time limits may be waived for good cause.  (Id. at pp. 7, 11.)

### D. Assessment of Plaintiff's Exhaustion

#### 1. Plaintiff's Supplemental Complaint Filings

After filing his original Complaint on November 17, 2015, regarding an alleged incident that occurred on February 28, 2015, Plaintiff filed three supplements to his Complaint, each of which pertain to alleged incidents that occurred months after the original filing date and approximately one year after the alleged assault. Plaintiff's first Motion to Supplement Complaint, filed on March 21, 2016, was granted under Federal Rule of Civil Procedure 15(a) as a matter of Plaintiff's right to amend once prior to responsive pleadings being filed. (Doc. 29, pp. 4–6.) Plaintiff's second and third Motions to Supplement, filed on April 28 and May 23, 2016 respectively, have yet to be ruled on, but, like his first supplement, concern events that happened *after* he filed his Complaint. By logical extension, Plaintiff could not have exhausted his administrative remedies as to the new Defendants and claims contained in his supplemental pleadings because they each concern incidents that occurred after Plaintiff filed this lawsuit. Exhaustion here would be temporally impossible. See Terry, 491 F. App'x at 83 (noting that the only relevant date for determining whether a prisoner exhausted is when he filed his original complaint).

Even so, Plaintiff alleges in his Response that he "in fact" exhausted all his available administrative remedies but never received timely appeals decisions from Defendants. (Doc. 46, pp. 1, 4.) Under step one of Turner, the Court must take Plaintiff's version of the facts regarding exhaustion as true. Thus, taking these facts as true, Plaintiff pursued his grievance as far as possible under the circumstances and, therefore, exhausted all *available* administrative remedies. However, in their Motion to Dismiss, Defendants argue that Plaintiff did not properly exhaust his available administrative remedies as to the claims arising from his supplemental complaint

pleadings. In support of their argument, Defendants provide an affidavit from Elizabeth Bowles, Chief Counselor and Grievance Coordinator at WSP, copies of GDC's grievance SOP, Plaintiff's grievance history, and copies of Plaintiff's grievances. (Docs. 41-2–41-7.)

Because of these conflicting accounts, the Court must proceed to step two of <u>Turner</u> and make a factual finding to resolve the dispute. Under these findings, the Court can then determine whether Plaintiff exhausted his administrative remedies. <u>Turner</u>, 541 F.3d at 1082–83. Defendants aver, and Plaintiff does not convincingly respond, that Plaintiff could not have possibly exhausted as to the claims in his supplemental complaint pleadings. (Doc. 41-1, p. 12–13.) Plaintiff's own pleadings belie his argument that exhaustion was "unavailable" as to the new Defendants and claims due to Defendants' untimely appeals processing because Plaintiff filed the supplements before any grievance could have possibly been exhausted, which takes a minimum of 140 days. For example, Plaintiff's first supplement alleges retaliatory placement in solitary confinement by Defendant Ritter on February 2, 2016, and other retaliation by Defendants Pratt, Cox, Adams, and Jenkins between March 14 and 17, 2016, yet he filed his first supplement only days later on March 21, 2016, (doc. 17), well before any appeal could have been deemed untimely processed. Plaintiff's second and third supplemental pleadings are much the same.[8] In fact, Plaintiff's second supplement evidences that his appeal of the grievance relating to Defendant Ritter's conduct had yet to be exhausted at the time of filing. (Doc. 25, p. 2.)

---

[8] Plaintiff's second supplement, filed approximately five weeks after the first on April 28, 2016, lacks specific dates as to the allegations contained therein but includes new accusations of retaliation by Defendant Ritter that presumably occurred after Plaintiff's filed his first supplement naming Ritter as a new Defendant. (Doc. 25.) Under the SOP, a grievance could not have been exhausted in that five-week span. Likewise, in Plaintiff's third supplement, filed on May 23, 2016, he alleges retaliatory conduct by Defendants Ritter, Adams, and Jenkins that occurred between April 19 and May 12, 2016, just weeks before he filed the supplement and well before any grievance could be exhausted.

Accordingly, Plaintiff's exhaustion argument fails at the second Turner step because the record, including Plaintiff's own pleadings, clearly shows he could not have exhausted as to the new Defendants and claims arising out of his three supplemental complaint filings. Thus, Plaintiff failed to exhaust his administrative remedies as to the claims arising from the events described in Plaintiff's three supplemental complaint pleadings.

Consequently, the Court should **GRANT** this portion of Defendants' Motion to Dismiss as to Defendants Ritter, Pratt, Cox, Adams, and Jenkins and **DISMISS without prejudice** the attendant claims alleged against them in Plaintiff's first supplement based on Plaintiff's failure to exhaust his administrative remedies. Further, for the same reasons, the Court **DENIES** Plaintiff's second and third Motions to Supplement.[9] (Docs. 25, 30.)

### 2. Plaintiff's Grievances

Since February 28, 2015, the date of the alleged incident giving rise to this action, Plaintiff has filed eleven grievances at WSP. (Doc. 41-4, p. 1.) Defendants aver, and Plaintiff does not contest, that only three of the eleven grievances he filed relate to the claims currently at issue: Grievance Numbers 197941, 196772, and 207489. (Doc. 41-1, p. 10; Doc. 41-2, pp. 6–7 (Bowles' affidavit noting that only these three grievances address any events or mention any Defendant named in this lawsuit).) Further, Defendants aver—and the record shows—that only Grievance Number 197941 was exhausted, whereas Grievances Numbered 196772 and 207489 were not appealed. (Doc. 41-1, pp. 11–12; Doc. 41-2, pp. 6–7; Doc. 41-5, p. 10 ("[Grievance 197941 is] effectively close[d]. . . [and] not appealable.").) Plaintiff responds to Defendants'

---

[9] In addition to exhaustion, Defendants argue that, under Federal Rule of Civil Procedure 20(a)(2), Plaintiff could not properly proceed jointly against any of the Defendants named in Plaintiff's supplemental pleadings because the claims against them fail Rule 20(a)(2)'s "logical relationship" test. (Doc. 41-1, pp. 6–8.) Pretermitting Defendants' Rule 20(a)(2) argument as a ground for dismissal, Plaintiff could not have possibly exhausted his claims as to these Defendants, and they are due to be dismissed on this ground. Accordingly, for the reasons discussed in Section I.D.1, *supra*, this argument is moot.

exhaustion argument by stating that he "did in fact" exhaust and that any non-exhaustion occurred because Defendants "did not respond" within the one-hundred day appeal time frame, making the grievance procedure "unavailable." (Doc. 46, p. 1.) At step one of the <u>Turner</u> analysis, accepting Plaintiff's assertions that he "did in fact" exhaust and Defendants were not timely processing his grievance appeals, Plaintiff exhausted the administrative remedies available to him as to the two disputed grievances, Numbers 196772 and 207489. However, under the more exacting crucible of <u>Turner</u>'s second step, Plaintiff's claim withers.

Although Plaintiff attached excerpts from his grievances and disciplinary reports to his Response, he does not explain their relevance, and an examination of them reveals nothing to dispute Defendant's contention that claims arising from Grievance Numbers 196772 and 207489 were not exhausted. Plaintiff's conclusory assertion he exhausted is thus unavailing. Moreover, Plaintiff's claim that he failed to exhaust because Defendants made grievance appeals "unavailable" is equally unavailing, because he filed suit as to claims contained in Grievance Numbers 196772 and 207489 prior to ever appealing them at WSP. (Doc. 41-2, pp. 6–7; Doc. 41-4, p. 1.)

The record, including Plaintiff's own filings, clearly shows that he did not exhaust these two grievances. Indeed, Plaintiff could not have exhausted Grievance Number 207489 because he filed this lawsuit a mere two weeks after submitting it, while the entire grievance procedure takes 140 days to exhaust. Like Plaintiff's claims lodged in his supplemental complaint pleadings, exhaustion here would be temporally impossible. Further, the record shows that Plaintiff did not file an appeal of Grievance Number 196772, which necessarily precludes exhaustion. Therefore, as to all claims arising from Grievance Numbers 196772 and 207489, Plaintiff has failed to exhaust, and those claims are due to be dismissed. <u>Bryant</u>, 530 F.3d at

1378; see also Terry, 491 F. App'x at 84 ("Because Smith failed to exhaust his administrative remedies before he 'brought' his [lawsuit], dismissal was proper."); Gipson v. Wilcox, No. CV 313-094, 2015 WL 1757487, at *4 (S.D. Ga. Apr. 17, 2016) ("As Plaintiff did not appeal the denial of his grievance related to the claims against Defendants, Plaintiff failed to satisfy the exhaustion requirement."), *report and recommendation adopted*, 2015 WL 2219684 (May 11, 2015); accord Morgan v. Ivey, No. 5:13-CV-0202, 2013 U.S. Dist. LEXIS 156758, *2–3 (M.D. Ga. Nov. 1, 2013) ("A prisoner must take each required step within the administrative process before filing a complaint in federal court.") (citations omitted).

As such, the Court must determine which of Plaintiff's claims were properly exhausted and preserved in Grievance Number 197941 and which of Plaintiff's claims are due to be dismissed for his failure to exhaust. See Bock, 549 U.S. at 223–24 (an unexhausted claim in the complaint will not require dismissal of the entire complaint).

### 3.    Adequacy of Plaintiff's Grievances

Defendants largely base their argument that Plaintiff's grievances are insufficient on two grounds.  First, Defendants argue that Plaintiff did not specifically name and exhaust his retaliation and Eighth Amendment claims as to Defendants sued in this action.  And second, they argue Plaintiff did not include the facts underlying his ADA Title II, excessive force, failure-to-intervene, deliberate indifference, and retaliation claims in his fully-exhausted grievance.

As to Defendants' first basis for finding lack of exhaustion, (doc. 41-1, p. 10–12), the PLRA's exhaustion requirement does not require Plaintiff to specifically "mention" Defendants as the persons against whom the complaint was made in his grievance. See Bock, 549 U.S. at 217, 219 ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement," and "exhaustion is not *per se* inadequate simply because an individual later sued was not named in

the grievances."); Toenniges v. Ga. Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015) ("Exhaustion of the grievance procedure does not require that every single defendant be identified by name."); Parzyck v. Prison Heath Serv., 627 F.3d 1215, 1218 (11th Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim."); Sikes, 212 F.3d at 1205, 1207 (11th Cir. 2000) ("The question before us is whether the § 1997e(a) exhaustion requirement always prohibits a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed. We think it does not.").

Rather, a prisoner plaintiff need only provide "all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses." Sikes, 212 F.3d at 1208. A grievance is sufficient when it complies with the prison's grievance procedures and provides notice of a problem such that prison officials have an opportunity to address it internally. Bock, 549 U.S. at 204, 218; Toenniges, 600 F. App'x at 649. In pertinent part, the GDC's grievance SOP requires prisoners to use a form, which instructs prisoners to "include specific information concerning your grievance to include dates, names or persons involved, and witnesses." (Doc. 41-3, p. 7; Doc. 41-5, p. 1.) Thus, as long as a prisoner includes enough specific information in his grievance to apprise prison officials of the issue so they "have an opportunity to resolve" it, the exhaustion requirement is met. Bock, 549 U.S. at 204. Accordingly, because Plaintiff's Grievance Number 197941 contained numerous specific details regarding the alleged assault—including dates, specifically named officers, unnamed officers and nurses, relevant facts, and witnesses—Defendants' argument that this grievance was not exhausted because it failed to specifically name certain Defendants is without merit.

However, it is clear from Plaintiff's grievances that he only exhausted his administrative remedies as to those claims alleged in and arising out of Grievance Number 197941. After a

thorough review of this Grievance and Plaintiff's Complaint, the Court finds each of the claims that survived frivolity review were exhausted because Plaintiff sufficiently alleged them in his only exhausted grievance. <u>Maldonado v. Unnamed Defendant</u>, 648 F. App'x 939, 953 (11th Cir. 2016) ("The exhaustion requirement, allowing prison officials to address complaints in the first instance, is satisfied as long as the inmate's grievance provides sufficient detail to allow prison officials to investigate the alleged incident."); <u>Parzyck</u>, 627 F.3d at 1219 ("Section 1997e(a)'s exhaustion requirement is designed to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.") (internal punctuation and citations omitted). The Court will address Defendants' exhaustion arguments as to each of these claims in turn.

### a.     ADA Title II Claims

Defendants contend Plaintiff failed to exhaust this claim because Grievance Number 207489 lacked specific facts regarding the unsafe walkway and was never itself appealed. (Doc. 41-1, p. 11)   While Defendants rightly argue Grievance Number 207489 was not exhausted, this argument ignores the allegations regarding the unsafe walkway and other ADA violations contained in Plaintiff's exhausted grievance, Number 197941.  Specifically, Plaintiff stated that the walkway in question "is completely a safety hazard due to my walking with a cane [and] walker," has "uneven cracks in [the] cement," and that Dr. Ferra was called by Defendant Johnson regarding a medical "profile to avoid walking" on the challenged walkway.  (Doc. 41-5, p. 1.)  Moreover, Plaintiff alleged that Defendants harassed him about walking on the walkway, forced him out of his "dorm without [his] walker" causing a seizure and then denied him medical care after assaulting him.  (<u>Id.</u> at pp. 1, 6.)  Plaintiff further alleged that the abuse occurred because correctional officer Defendants believed he lied about having a medical profile that excluded him from use of the walkway.  (<u>Id.</u> at p. 7.)  Accordingly, Plaintiff exhausted his ADA

Title II claim because his grievance included details sufficient to allow investigation of the ADA issues.

### b. Excessive Force, Failure to Intervene, and Deliberate Indifference Claims

Defendants contend that each of these claims fail because Grievance Number 197941 "does not mention any of the Officer Defendants, and fails to otherwise describe the individuals who allegedly took part in this assault." (Doc. 41-1, p. 11.) This contention is utterly without merit. In the challenged Grievance, Plaintiff alleged, that on February 28, 2015, at 07:00, "Sgt. Nunn and three other white male officers" removed him from his cell, "slammed" him, and physically assaulted him in medical "with choking [and] elbows to [his] head," all after he had already suffered the seizure. (Doc. 41-5, pp. 1, 6.) Further, Plaintiff even acknowledged that he did not know the names of the "three other [abusing] officers." (Id. at p. 1.) Thus, Plaintiff not only specifically named Defendant Nunn in this Grievance, he also apprised prison officials that three other white male officers joined in the assault. Taking into account the allegations of severe abuse, Plaintiff provided a reasonable description in Grievance Number 197941 that sufficiently put prison officials on notice of Plaintiff's Eighth Amendment claims.

Likewise, although Plaintiff did not specifically name nurse Defendants Brad and Bennett in this Grievance, he did allege the assault took place in medical and was witnessed by "two male nurses and one female nurse" who did nothing to stop the attack and laughed as the officers beat and verbally harassed him. (Id.) Afterward, the female nurse reportedly remarked, "[T]here's nothing wrong with [him]." (Id. at p. 6.) Plaintiff also noted that the nurses were white, one male nurse had glasses, and the other male nurse had a beard. (Id.) In addition to the extensive injuries he noted—a bruised eye, throat, and waist; open bleeding; and being soaked

with urine from the seizure—Plaintiff also alleged that one of the officers placed him in a cell after the attack while he was in this obviously injured state. (Id. at pp. 1, 6.)

Given the detail Plaintiff provided in Grievance Number 197941, Plaintiff exhausted his Eighth Amendment excessive force, failure to intervene, and deliberate indifference claims, and it is disingenuous for Defendants to argue otherwise.

### c.    Retaliation Claims

Defendants argue that Plaintiff failed to exhaust his retaliation claim because no grievance concerns these allegations and none of them specifically mention Defendants Gramiak and Johnson in relation to Plaintiff's retaliation claims. (Doc. 41-1, p. 10.) Although it is true that Plaintiff did not specifically allege in exhausted Grievance Number 197941 that Defendants Gramiak and Johnson retaliated against him, this Grievance offers sufficient detail to put prison officials on notice that Plaintiff was being retaliated against. Indeed, Plaintiff alleged that he notified Defendant Johnson in reference to being harassed by Defendant Nunn and Lt. Crosby about using the walkway. (Doc. 41-5, p. 1.) Further, Plaintiff stated his pleas for help from the complained-of harassment were a "[segue]" for the assault he suffered in medical and noted he fears more assaults will take place. (Id.) From these allegations, it cannot be said that Plaintiff failed to put prison officials on notice of his complained of retaliation. Accordingly, this Grievance serves to sufficiently exhaust Plaintiff's retaliation claims. See Maldonado, 648 F. App'x at 953 (holding that a retaliation claim does not fail for lack of exhaustion simply because the grievance "did not allege a retaliatory motive" and rejecting that grievances must state specific legal theories to properly exhaust Section 1983 claims).

The foregoing analysis of Plaintiff's Grievance Number 197941 reveals that prison officials were sufficiently apprised of those claims the Court found meritorious at frivolity

review to meet the exhaustion requirement. While Plaintiff's claims alleged in his supplemental complaint filings are due to be dismissed for failure to exhaust, the claims from his initial Complaint which survived frivolity review are not. As such, the Court will continue its analysis for Plaintiff's properly-exhausted claims that: Defendant GDC's walkway violates the ADA; Defendants Nunn and Kicklighter's assault violated the Eighth Amendment (excessive force); Defendant Brad's lack of help during the assault violated the Eighth Amendment (failure to intervene); Defendants Nunn and Kicklighter's leaving Plaintiff in a holding cell after the attack and subjecting him to the unsafe walkway violated the Eighth Amendment (deliberate indifference); Defendants Gramiak, Johnson, and Brad's refusal to help Plaintiff after the assault and subjecting him to the unsafe walkway violated the Eighth Amendment (deliberate indifference); and Defendants Gramiak and Johnson's failure to stop the abuse Plaintiff suffered violated the First Amendment (retaliation).

Accordingly, the Court should **DENY** this portion of Defendants' Motion to Dismiss on exhaustion grounds as to these particular claims.

## II.     Defendants' Assertion of Abandonment

In their Reply to Plaintiff's Response, Defendants argue that Plaintiff has abandoned those claims where he failed to individually respond to each of Defendants' Motion to Dismiss arguments. (Doc. 52, pp. 1–2.) Specifically, Defendants contend Plaintiff abandoned: those claims alleged in his supplemental complaint filings; his deliberate indifference to health and safety claim regarding the unsafe walkway; his deliberate indifference to a serious medical need claim regarding the assault; his ADA Title II claim; and all of his constitutional claims that are subject to qualified immunity. (Id.) However, neither the Federal Rules of Civil Procedure nor

this Court's Local Rules[10] require the Court to categorically consider a portion of a motion to dismiss as unopposed, and the claims thereunder abandoned, when the non-moving party does not specifically address that portion. While Plaintiff did not address each of Defendants' arguments in his Response, he did, contrary to Defendants' assertion, discuss his ADA claim, as well as several other of Defendants' arguments, and he furthermore reiterated "that every claim is true." (Doc. 46, pp. 1–3.) Thus, Plaintiff clearly demonstrated his opposition to Defendants' Motion.

Moreover, the case law Defendants offer in support of their abandonment argument is unhelpful at best, misplaced at worst. Defendants cite Grimes v. Board of Regents of the University System of Georgia, No. 6:13-cv-75, 2014 WL 1268816, at *5 (S.D. Ga. Mar. 27, 2014), for the proposition that "plaintiff abandoned [Section 1983 claims] where plaintiff failed to respond to defendants' arguments for dismissal." (Doc. 52, pp. 1–2.) Unlike here where Plaintiff has alleged several claims under two causes of action, Section 1983 and the ADA, the plaintiff in Grimes alleged claims under a litany of causes of action, including: 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; Title IX, Title VII, and state law tort claims. Grimes, 2014 2014 WL 1268816, at *5. The Grimes court found the plaintiff to have abandoned all her claims except those alleged under Section 1981 because she "failed to brief or argue any claim besides" those brought under the Section 1981 cause of action. Id. In contrast, Plaintiff here specifically addressed Defendants' arguments to several of his claims under Section 1983, as well as his claims under the ADA, in his Response. (Doc. 46, pp. 1–3.) Unlike the plaintiff in Grimes, Plaintiff actually argued for his Section 1983 and ADA causes of action, even if inartfully.

---

[10] Local Rule 7.5 simply states that, "[E]ach party opposing a motion shall serve and file a response . . . . Failure to respond within the applicable time period shall indicate that there is no opposition to a motion." This Local Rule does not provide that a plaintiff must respond to each portion of the Motion to Dismiss to indicate that he opposes it. Rather, it only requires a response be filed to indicate opposition to a motion, a burden Plaintiff met here.

Defendants' reliance on <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1326 (11th Cir. 2000), is even more misplaced. In that case, the Eleventh Circuit upheld the district court's denial of supplemental jurisdiction premised on abandonment grounds. <u>Id.</u> at 1325–26. Because appellants failed to argue or brief their claim under the Georgia Constitution before the district court during trial proceedings, the Eleventh Circuit held they had abandoned this claim. <u>Id.</u> Thus, that case was not about what Defendants contend occurred here—an alleged failure to respond at the motion to dismiss stage. Contrary to Defendants' assertions, neither <u>City of Atlanta</u> nor <u>Grimes</u> stand for the proposition that, in order to avoid being found to have abandoned certain claims, a plaintiff must include an itemized rebuttal response to each of the arguments in a motion to dismiss he or she opposes.[11]

Therefore, in this case, particularly taking into consideration Plaintiff's *pro se* status, the Court finds it prudent to address the merits of Defendants' substantive arguments rather than treating Plaintiff's claims as abandoned.

---

[11] The two cases Defendants cite to in their footnote, <u>Brown v. J.P. Turner & Co.</u>, No. 1:09-CV-2649-JEC, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) and <u>White v. Georgia Department of Motor Vehicle Safety</u>, No. 1:06-CV-0124-TWT-ECS, 2006 WL 1466254, at *1–2 (N.D. Ga. Apr. 17, 2006), are equally misplaced and distinguishable from the case at bar. (Doc. 52, p. 2 n.1.) In <u>Brown</u>, the court dismissed two of plaintiffs' four causes of action for fraud under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), one for common law negligence and the other for negligent misrepresentation, because plaintiffs' response failed to address defendant's arguments as to these two counts. 2011 WL 1882522, at *1–2, 5. Here, Defendants' Motion to Dismiss is made under Rule 12(b)(6), not Rule 9(b), and Plaintiff discusses both of his causes of action in his Response, unlike the plaintiffs in <u>Brown</u>.

In <u>White</u>, the court dismissed plaintiff's Title VII claims because she failed to file a response at all. 2006 WL 1466254, at *2. Here, Plaintiff actually filed a Response; thus Defendants' Motion was opposed, unlike in <u>White</u>. Furthermore, the excerpt Defendants rely on from <u>White</u>, that a "failure to respond to arguments relating to a claim constitutes abandonment of the claim," pertained to claims being dismissed on motions for summary judgment. <u>See id.</u> at *1 (collecting summary judgment cases). Thus, given Plaintiff's Response to Defendants' Motion to Dismiss, none of the cases Defendants cite support dismissal for failure to respond at this stage of litigation.

### III. Plaintiff's Claims Under Section 1983

#### A. Eighth Amendment Excessive Force Claims Against Defendants Nunn and Kicklighter

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Defendants do not assert Plaintiff failed to state an excessive force claim, (doc. 41-1), nor do they oppose such a claim on qualified immunity grounds, (id. at p. 34 n.22).[12]  This Court previously found Plaintiff successfully alleged a plausible excessive force claim against Defendants Nunn and Kicklighter.  (Doc. 12, p. 11.)  In pertinent part, Plaintiff alleges in his Complaint that these Defendants jerked him away from his walking impairment device, handcuffed him, restrained him in the prison infirmary, and proceeded to beat him without any provocation or other reason.  (Doc. 1, pp. 5, 7.)  Accordingly, Plaintiff's excessive force claims against Defendants Nunn and Kicklighter shall proceed.

### B.    Eighth Amendment Failure to Intervene Claim Against Defendant Brad

"[A]n officer can be liable for failing to intervene when another officer uses excessive force."  Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000) ("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]" (alterations in original) (citing Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998))). "This liability, however, only arises when the officer is in a position to intervene and fails to do so."  Id.; see also Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (explaining that a direct failure to intervene claim "requir[es] the allegations to include facts showing the necessity or real opportunity for the defendant-officers to intervene in a fellow officer's unlawful conduct").  The duty to intervene has been found applicable to prison nurses.  Neely v. Parra, No. 5:13-cv-316-RH-GRJ, 2015 U.S. Dist. LEXIS 176468, at *18–19 (N.D. Fla. Dec. 18, 2015); see also Durham v. Nu'Man, 97 F.3d 862, 868 (6th Cir. 1996) (finding a duty and noting that the nurse could have directed the hospital security officers to stop their attack or could have called

---

[12]  Although Defendants' Motion to Dismiss was filed to "dismiss all claims asserted [] in this action," (doc. 41), they do not assert in their supporting Memorandum of Law, (doc. 41-1), that Plaintiff failed to plausibly state an excessive force claim and only oppose this claim on exhaustion grounds.

for other security to arrive, rather than idly watching the attack unfold).  However, if there is no underlying use of excessive force, another officer has no obligation to intervene.  Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009).

Defendants argue that Plaintiff has failed to state a failure to intervene claim against Defendant Brad because he does not assert that the nurse witnessed or was otherwise aware of the assault underlying Plaintiff's excessive force claim.[13]  (Doc. 41-1, p. 18.)  Thus, Defendants also contend Plaintiff has failed to allege that Defendant Brad was in a position to intervene.  (Id. at p. 19.)  Defendants' arguments border on frivolity.  In his Complaint, Plaintiff alleges that the assault occurred "in medical" and that Defendant Brad laughed at and mocked him while he was "being assaulted."  (Doc. 1, pp. 5, 6.)  He also alleges that Defendant Brad "proceeded to allow officers to remove [him] from medical."  (Id. at p. 6.)  Although Plaintiff does not explicitly state Defendant Brad failed to intervene on his behalf upon witnessing the alleged excessive use of force, such a claim is implicit in Plaintiff's Complaint.  Moreover, contrary to Defendants' contentions, Plaintiff clearly alleges that Defendant Brad witnessed the assault while it occurred in the prison's medical infirmary.

Construing Plaintiff's Complaint liberally and in the light most favorable to him, Plaintiff has successfully stated a failure to intervene claim against Defendant Brad.  The combined effect of Plaintiff's allegations concerning Defendant Brad's conduct supports an inference that he was in a position to intervene in the use of excessive force yet failed to do so.  Accordingly, the Court should **DENY** this portion of Defendants' Motion to Dismiss as to Defendant Brad.

---

[13]  As an initial matter, Defendants state the incorrect legal standard for Plaintiff's failure to intervene claim.  Defendants cite to Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014), which is a case involving a failure to protect claim, for the elements of a failure to intervene claim. Although these are related Eighth Amendment claims, they have different precise standards and apply to different fact situations.  The failure to intervene standard applies when a prison official declines to intervene in another officer's use of excessive force.  Priester, 208 F.3d at 924.  To the extent possible, the Court will construe and apply Defendants' arguments under the proper legal standard.

## C. Eighth Amendment Deliberate Indifference to Serious Medical Needs Claims

The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002).

Thus, in order to prove a deliberate indifference to medical care claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). As to the first, objective component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). In either case, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003) (quoting Farmer, 511 U.S. at 834). Under the second, subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). The subjective

component therefore requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016).[14]

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons" or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted). However, deliberate indifference is not established when an inmate receives medical care, but "may have desired different modes of treatment." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

Defendants contend Plaintiff's claim for deliberate indifference to serious medical needs fails to show both a serious medical need and deliberate indifference by Defendants to that need. (Doc. 41-1, p. 24.) They also contend Plaintiff fails to establish causation. (Id.) The Court will first assess whether Plaintiff sufficiently alleges a serious medical need in his Complaint. The Court will then assess whether Plaintiff's allegations could establish causation and whether Defendants were deliberately indifferent to that risk.

### 1. Serious Medical Needs

In his Complaint, Plaintiff alleges that following the assault—which left him soiled in urine, blood, and feces and left him with visible bruising around his eye, neck, and other parts of

---

[14] In Melton, the Eleventh Circuit addressed a discrepancy regarding the precise language of the deliberate indifference standard. 841 F.3d at 1223 n.2. As to the third prong, on negligence, some earlier cases had required a showing of "conduct that is more than gross negligence," e.g., Goebert, 510 F.3d at 1327, while others had only required a showing of "conduct that is more than mere negligence," e.g., McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). The Melton Court directly addressed this issue and decided that, consonant with Farmer, plaintiffs need only show conduct that is more than *mere* negligence. 841 F.3d at 1223, 1223 n.2. Accordingly, this Court will use the mere negligence standard.

his body, as well as a swollen groin—he was placed into solitary confinement without receiving any medical attention. (Doc. 1, pp. 5–6.) These factually specific allegations give rise to the inference that Plaintiff was in such a state of harm following the alleged assault that his outward appearance would easily allow a lay person to recognize the need for a doctor's attention. The extensive physical injuries Plaintiff alleged in his Complaint, taken as true and construed in his favor, are sufficiently serious to establish the objective component of his claim. See Lloyd v. Van Tassell, 318 F. App'x 755, 759 (11th Cir. 2009) ("We have noted that broken bones and bleeding cuts are serious medical needs that require medical attention within hours."); cf. Hill, 40 F.3d at 1189 (no serious medical need found where plaintiff failed to allege "continued bleeding that would signify an urgent or emergency situation"). Here, Plaintiff noted that, in addition to his visible bruising, he was covered in blood and other bodily fluids, which could signify an urgent situation needing medical attention; thus his allegations meet the objective component.

### 2. Defendants Nunn, Kicklighter, and Brad

Plaintiff alleges that Defendants Nunn and Kicklighter removed him from medical following their assault of him there and took him to solitary confinement without ever allowing him to receive treatment, (doc. 1, pp. 5, 6), and that Defendant Brad mocked him and allowed him to be removed from medical without treatment, (doc. 1, p. 6). Plaintiff was then left shackled in the solitary confinement holding cell for two hours. (Id. at pp. 5, 7.) Because Plaintiff has alleged that these Defendants either participated in or witnessed the assault and the alleged resultant injuries, he has alleged that they had "subjective knowledge of [his serious medical needs]." See Bingham, 654 F.3d at 1176. The reasonable inference from these allegations is that these three Defendants were in the same room as Plaintiff and were directly

aware of his condition.[15]   Additionally, because Plaintiff has alleged that these Defendants did

nothing to treat or assess the severity of his injuries, he has alleged that they "disregard[ed] that

risk."  Id.  Finally, because Plaintiff's allegations indicate that these Defendants did nothing at all

to treat the injuries he suffered during the assault, he has alleged that their "conduct was more

than mere negligence."  See id. (failing to provide any treatment at all can establish conduct

beyond mere negligence).

Defendants contend that Plaintiff fails to establish a causal connection between his

injuries and Defendants' alleged wrongful conduct because the allegations in his Complaint do

not show a serious medical need or that Defendants wrongfully ignored such a need.  (Doc. 41-1,

p. 27.)  However, as shown above, Plaintiff's Complaint, taken as true and construed in his favor,

establishes that he had a serious medical need and that these Defendants acted with deliberate

indifference to that need.  Thus Plaintiff has stated a plausible claim.  Accordingly, the Court

should **DENY** this portion of Defendants' Motion to Dismiss as to Defendants Nunn,

Kicklighter, and Brad.

### 3.      Defendants Gramiak and Johnson

Defendants contend that, because Plaintiff fails to allege Defendants Gramiak and

Johnson were even aware of his injuries, he fails to allege that they disregarded his condition

with sufficiently negligent conduct.  Although Plaintiff states that these Defendants "ignored his

pleas for assistance," (doc. 1, p. 6), further examination of Plaintiff's Complaint reveals that this

allegation was made in conjunction with his claims about retaliation and the unsafe walkway

rather than his claims about not receiving any medical care.  Likewise, Plaintiff's allegation that

no "[a]dministrative officials" were willing to get a visual of his injuries was not made in

conjunction with any allegations pertaining to Defendants Gramiak and Johnson's conduct in this

---

[15]  Moreover, Plaintiff alleges that his injuries were "clearly visible."  (Doc. 1, p. 6.)

case.  (Id.)  In light of Plaintiff's specific allegations against these Defendants regarding the unsafe walkway, this generalized claim does not show that they had the requisite subjective knowledge of his medical needs.  Moreover, unlike with Defendants Nunn, Kicklighter, and Brad, Plaintiff does not allege that Defendants Gramiak and Johnson were involved in or present during the assault that occurred in medical.  Therefore, Plaintiff fails to show that these Defendants were deliberately indifferent to the injuries he suffered from the assault. Accordingly, the Court should **GRANT** this portion of Defendants' Motion to Dismiss as to Defendants Gramiak and Johnson and **DISMISS** Plaintiff's deliberate indifference to medical needs claim against them.

### D.  Eighth Amendment Deliberate Indifference to Health and Safety Claims

The cruel and unusual punishment standard of the Eighth Amendment also requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care."  Farmer, 511 U.S. at 832.  Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations and citation omitted).  Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons.  Id.  Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities."  Id. at 347.  The prisoner must show that an "extreme" condition "pose[d] an unreasonable risk of serious damage to his future health or safety.  Chandler, 379 F.3d at 1289 (quotations and citation omitted).  However, "[c]ontemporary standards of decency must be

brought to bear in determining whether a punishment is cruel and unusual." <u>Bass v. Perrin</u>, 170 F.3d 1312, 1316 (11th Cir. 1999).

The Eighth Amendment requires prison officials to take reasonable measures to ensure the safety of inmates. <u>Farmer</u>, 511 U.S. at 833. This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. <u>Carter v. Galloway</u>, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing <u>Farmer</u>, 511 U.S. at 828); <u>see also</u> <u>Farmer</u>, 511 U.S. at 837 (a prison official is liable under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety"). "While an inmate need not await a tragic event before seeking relief, . . . he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety." <u>Chandler</u>, 379 F.3d at 1289–90 (internal quotation marks and citations omitted). In order to prevail on such a claim, a plaintiff must "allege facts sufficient to show '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation'" between the defendant's acts or omissions and the alleged constitutional deprivation. <u>Lane v. Philbin</u>, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting <u>Hale</u>, 50 F.3d at 1582). Hence, a deliberate indifference to health and safety claim has both an objective and subjective element. <u>Chander</u>, 379 F.3d at 1289, 1296–97.

The Court assesses the first element—a substantial risk of serious harm—under an objective standard. <u>Id.</u> The objective component of a deliberate indifference claim is contextual and requires a plaintiff to show that the issue he complains of is sufficiently serious to violate the Eighth Amendment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992); <u>Chandler</u>, 379 F.3d at 1289. The Court assesses the second element—defendants' deliberate indifference to a substantial risk of serious harm—under a subjective standard that has three components: "(1) subjective

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow, 320 F.3d at 1245 (citing McElligott, 182 F.3d at 1255). The "subjective knowledge of a risk of serious harm" component requires a defendant to have "actual knowledge that an inmate faced a substantial risk of serious harm[.]" Caldwell, 748 F.3d at 1099 (citing Farmer 511 U.S. at 837). Thus, putting these two elements together, the Eleventh Circuit has stated that "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

Defendants argue that Plaintiff fails to establish both the objective and subjective elements necessary to state a deliberate indifference to health and safety claim. (Doc. 41-1, pp. 20–24.) The Court will first assess whether Plaintiff's contentions, taken as true and construed in his favor, sufficiently allege that the unsafe walkway posed a substantial risk of serious harm, as contemplated by the Eighth Amendment. The Court will then assess whether Plaintiff's allegations could plausibly establish that Defendants were deliberately indifferent to that risk.

### 1.    Substantial Risk of Serious Harm

Defendants contend Plaintiff's allegations regarding the allegedly unsafe walkway—that it has three-inch cracks in the floor, four-inch screws protruding from the ceiling and floor, outward-hanging screws, steep declined areas, and no safety barriers, (doc. 1, p. 6; doc. 17, p. 3)—do not satisfy the substantial risk of serious harm element.[16]   (Doc. 41-1, pp. 21–22.)

---

[16] Citing to one non-binding district court case, Defendants assert this claim fails at the threshold because the unsafe walkway is "presumably used . . . by correctional officers" and is thus not a "condition unique to [Plaintiff's] confinement." (Doc. 41-1, p. 21 n.11.) However, the reasonable inference from Plaintiff's Complaint and supplemental filings is that the subject walkway is only used by prisoners, because Plaintiff asserts that Defendants force him to use it, (doc. 1, p. 6), refers to it as a "security loop," (doc. 17, p. 2), asserts that other inmates have been injured using it, (id.), and contends that officers

Further, they contend Plaintiff fails to adequately describe all the characteristics of the walkway, such as the ceiling height or grade of the incline, to state a claim. (Id.) In support, Defendants point to several Circuit court cases that found slippery or wet floor conditions insufficient to state an Eighth Amendment claim. (Id. (citing e.g., Reynolds v. Powell, 370 F.3d 1028, 1031 (10th Cir. 2004) (slippery condition arising from standing water in prison shower did not pose substantial risk of serious harm to inmate on crutches who had warned prison employees that he was at heightened risk of falling).)

Taken together and construed in his favor, Plaintiff's allegations regarding the walkway establish a possible substantial risk of serious harm. Unlike a merely wet floor, Plaintiff sets forth several allegations about the walkway that combine to show it poses a substantial risk of serious harm to a disabled inmate who must use a mobility impairment device to ambulate and has fallen on the walkway before, (doc. 1, p. 6). See Wilson v. Weiner, 43 F. App'x 982, 987 (7th Cir. 2002) (district court erred in granting the defendant's motion for summary judgment where prisoner had requested but not received photographs of stairwell in discovery because "from [a photograph of the stairwell] a fact-finder could draw an inference as to the obviousness [or lack thereof] of the risk the stairs posed to inmates on crutches"); Frost v. Agnos, 152 F.3d 1124, 1128–29 (9th Cir. 1998) (holding that a triable issue of fact existed on the detainee's constitutional claim where the detainee plaintiff, who had to use crutches, alleged that prison officials refused to provide him with adequate shower accessibility accommodations); Hall v. Moore, No. 3:14cv140/MCR/CJK, 2015 WL 9946410, at *8–9 (N.D. Fla. Dec. 29, 2015) (finding mobility impaired prisoner's claim that requiring him to use the stairs created a substantial risk of serious harm as to him established the objective prong of an Eighth

---

threaten him with punishment if he does not go into the loop, (id. at p. 3). In his Response, Plaintiff also notes that only prisoners use the unsafe walkway. (Doc. 46, p. 2.) Accordingly, Defendants' threshold argument on this basis is without merit.

Amendment claim).[17]  Plaintiff sufficiently alleges an unreasonable risk of serious harm by asserting that prison officials forced him, a disabled inmate, to traverse a walkway fraught with safety hazards on which he had previously fallen and injured himself.  Contemporary standards of decency, as codified in the ADA and announced in cases like those cited herein, compel the conclusion that subjecting disabled inmates to such conditions without any safety accommodations constitutes an unreasonable risk of serious harm.

### 2.      Defendants Gramiak and Johnson

Defendants contend that, even if Plaintiff notified Defendants Gramiak and Johnson about the unsafe features of the walkway, he cannot state a claim because their failure to respond to these concerns was at most negligent.  (Doc. 41-1, p.23.)  They also argue that his allegation about notifying these Defendants is conclusory, unsupported by facts, and should not be entitled to the presumption of truth.  (Id.)  In his Complaint, Plaintiff alleges that Defendants Gramiak and Johnson "ignored [his] pleas for assistance" with respect to other officers retalitorily forcing him to use the unsafe walkway and the resulting hand injury he suffered.[18]  (Doc. 1, p. 6.) Although this allegation could have been more clearly drafted, given the context in which it was made, it supports the inference that Defendants Gramiak and Johnson had personal knowledge of the unsafe walkway and disregarded that risk by doing nothing.  At this stage of litigation, it cannot be said as a matter of law that the decision of Defendants Gramiak and Johnson to

---

[17]  See also LaFaut v. Smith, 834 F.2d 389, 392–94 (4th Cir. 1987) (finding that the failure of prison officials to accommodate and ensure that mobility-impaired inmates had accessible toilet facilities resulted in the violation of the prisoner's constitutional rights); Johnson v. Smith, No. 9:03-CV-1050 (FJS/DEP), 2006 WL 1843292, at *3–4 (N.D.N.Y. June 29, 2006) (concluding that an issue of fact exists as to whether a deteriorating and bubbling gym floor created a substantial risk of serious harm to plaintiff who suffered from an ankle injury).

[18]  Plaintiff's Supplemental Complaint also alleges he notified Supervisory Defendants that other officers were forcing him to use the unsafe walkway "in such defiance of [his] disability and safety" but was ignored.  (Doc. 17, p. 3.)

entirely ignore this disabled Plaintiff's concerns about and injury from an allegedly unsafe walkway was only mere negligence. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985) ("[K]nowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference.") (citations omitted). Moreover, Frost holds that declining to provide a disabled detainee any accommodation can suffice to state a claim for deliberate indifference under the Eighth Amendment standard applicable to prisoners. 152 F.3d at 1128–29 ("[Prison officials] were deliberately indifferent in failing to provide any accommodations whatsoever."). Accordingly, the Court should **DENY** this portion of Defendants' Motion to Dismiss as to Defendants Gramiak and Johnson.

However, in light of Plaintiff being moved from WSP to GSP, (doc. 59), the Court should **DISMISS as moot** his Eighth Amendment claims against Defendants Gramiak and Johnson for injunctive relief regarding the unsafe walkway. Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted) ("An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."); see Wahl v. McIver, 773 F.2d 1169, 1173–74 (11th Cir. 1985) (per curiam) (finding prisoner's conditions of confinement claim for injunctive relief moot because he was transferred to a different facility during the course of litigation).

### 3. Defendants Nunn, Kicklighter, and Brad

Defendants contend that Plaintiff fails to satisfy the subjective deliberate indifference prong as to Defendants Nunn, Kicklighter, or Brad, because he fails to allege that they were personally aware of the allegedly unsafe walkway. (Doc. 41-1, p. 23.) A thorough review of Plaintiff's Complaint, (doc. 1), and Supplemental Complaint, (doc. 17), shows that Plaintiff fails

to allege any facts which could establish that these Defendants had the requisite subjective knowledge of his specific concerns about the walkway.[19] Unlike with Defendants Gramiak and Johnson, Plaintiff does not allege that he ever notified Defendants Nunn, Kicklighter, or Brad of the risk the walkway posed to him or otherwise plead facts showing their personal involvement with the unsafe walkway allegations. Accordingly, the Court should **GRANT** this portion of Defendants' Motion to Dismiss as to Defendants Nunn, Kicklighter, and Brad and **DISMISS** the deliberate indifference to health and safety claim alleged against these three Defendants.

### E. First Amendment Failure to Stop Claims Against Defendants Gramiak and Johnson

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)). "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant, 637 F.3d at 1212. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the

---

[19] At frivolity review, the Court forewarned Plaintiff that he would need to show some personal involvement or causal connection between Defendants and the allegedly unsafe walkway in order to maintain his deliberate indifference to health and safety claim. (Doc. 12, p. 16.) With respect to Defendants Nunn, Kicklighter, and Brad, Plaintiff failed to heed that warning.

protected speech." Mosley, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Moreover, Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of *respondeat superior*. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) (citing West v. Tillman, 496 F.3d 1321, 1328–29 (11th Cir. 2007)).

Defendants contend Plaintiff fails to show that he suffered adverse retaliatory action and fails to show a causal connection between his protected speech and the alleged retaliatory action. (Doc. 41-1, p. 13.) Defendants further contend that Plaintiff fails to plead facts sufficient to hold Defendants Gramiak and Johnson liable in their supervisory positions for the wrongful retaliatory conduct of other officers. (Id. at p. 14.) Plaintiff argues in his Response that the chronological log he has submitted shows the causal relationship between his protected activity and the adverse retaliatory conduct he has suffered. (Doc. 46, p. 4.)

At the frivolity review stage, this Court identified a viable retaliation claim against Defendants Gramiak and Johnson; however, upon further consideration and in light of the allegations Plaintiff set forth in his first Supplemental Complaint, the Court finds that Plaintiff has instead plausibly alleged a failure to stop claim against Defendants Gramiak and Johnson.[20] Although the facts supporting each claim are the same in that Plaintiff complains of a failure to stop another's retaliatory conduct, Plaintiff's assertions are more appropriately styled as a failure to stop claim with respect to Defendants Gramiak and Johnson and their alleged inaction. In his Complaint, Plaintiff states Defendants Gramiak and Johnson have "ignore[d] his pleas for assistance" with the retaliatory death threats and harassment that began occurring after he filed his grievance pertaining to the assault. (Doc. 1, p. 6.) Further, in his Supplemental Complaint, Plaintiff alleges that he "notified Defendants Gramiak and Johnson" about other prison officials retaliating against him by forcing him to use the unsafe walkway and threatening him with solitary confinement, but these Defendants ignored him. (Doc. 17, p. 1, 3.)

As discussed above, an officer can be directly liable for failing to intervene when another officer commits a constitutional violation. Ensley, 142 F.3d at 1407–08 (11th Cir. 1998) (citation omitted). In the First Amendment context, when such a claim is alleged under a theory of supervisory liability, a plaintiff must show only that the supervisor "(1) [had] the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fail[ed] to exercise that authority to stop it." Keating, 598 F.3d at 765 (citing Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (requiring only allegations of a "causal connection between actions

---

[20] In light of Plaintiff's allegations in his Supplemental Complaint, (doc. 17), and his right to amend in response to a Motion to Dismiss, Fed. R. Civ. P. 15(a)(1)(B), the Court finds Plaintiff's allegations are more properly couched as a failure to stop claim under the First Amendment rather than a retaliation claim.

of the supervising official and the alleged constitutional violation"). While a supervisory failure to stop claim is similar to a direct failure to intervene claim, the difference between them "lies in the position and authority of the defendant with respect to the person who commits the constitutional violation." Id. Further, unlike a direct failure to intervene claim, a plaintiff need not show the "necessity or real opportunity" for the supervisory defendant to intervene in another officer's unlawful conduct when stating a failure to stop claim under a supervisory liability theory. Id. at 764–65.

Here, the facts plausibly show that Defendants Gramiak and Johnson had knowledge of the alleged retaliation yet did nothing to prevent it. Plaintiff was ignored, despite him pleading to Defendants Gramiak and Johnson for help in stopping other officers' retaliation against him for filing grievances. (Doc 1, p. 6; Doc. 17, pp. 1, 3.) Accepting Plaintiff's allegations as true and construing them in the light most favorable to him, he sets forth a plausible failure to stop claim against Defendants Gramiak and Johnson. A reasonable inference can be drawn from these allegations that these Defendants, Warden and Deputy Warden respectively, "[had] the ability to prevent or discontinue a known constitutional violation," Keating, 598 F.3d at 765, because Plaintiff had notified them of the retaliation and because the ability to control subordinate officers' conduct is implicit in the Warden and Deputy Warden positions. Likewise, Plaintiff's claim that they ignored him shows that Defendants Gramiak and Johnson "subsequently fail[ed] to exercise [their] authority," id., to stop the retaliation. Thus, their alleged inaction in the face of Plaintiff's pleas for help caused the First Amendment violations. See id.; Gonzalez, 325 F.3d at 1235 (explaining that causation can be shown by facts which support an inference that the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so") (citation omitted).

Therefore, because Plaintiff alleges that he notified Defendants Gramiak and Johnson of the alleged retaliatory acts he suffered after filing his grievance and they did nothing to prevent these retaliatory acts from occurring further, Plaintiff has plausibly stated a First Amendment failure to stop claim under a theory of supervisory liability. Accordingly, the Court should **DENY** this portion of Defendants' Motion to Dismiss as to Defendants Gramiak and Johnson.[21]

## IV. Plaintiff's ADA Claims Against the GDC

Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. See 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). State prisons are public entities for purposes of the ADA. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). To state a claim of discrimination under Title II, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing 42 U.S.C. § 12132). Public entities must make reasonable modifications to their policies, practices, or procedures when necessary to avoid discrimination on the basis of a disability unless making the modifications would "fundamentally alter the nature of the service[s], program[s], or activit[ies]." 28 C.F.R. § 35.130(b)(7). An ADA claim against a prison "may proceed on the

---

[21] Because the Court did not discuss this particular First Amendment claim in its prior Report and Recommendation, (doc. 12), the Court will allow Defendants fourteen (14) days from the date of this Order to file a motion to dismiss on this specific claim, should they so choose. However, the Court finds Plaintiff sufficiently exhausted this claim in Grievance Number 197941 for the same reasons it found his retaliation claim exhausted. See supra, § I.D.3. The highly similar nature of these two First Amendment claims and the identical allegations giving rise to each impart notice sufficient to meet the exhaustion bar.

theory that it failed to reasonably accommodate" the plaintiff.  Lonergan v. Fla. Dep't of Corr., 623 F. App'x 990, 992 (11th Cir. 2015) (citing Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)).

A disability is "a physical or mental impairment that substantially limits one or more major life activities," including walking, caring for oneself, concentrating, or thinking. 42 U.S.C. §§ 12102(1)(A), (2)(A).  A qualified individual with a disability is someone who has a disability and "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity," with or without reasonable modifications.  42 U.S.C. § 12131(2).

Unlike Section 1983, Title II of the ADA abrogates state sovereign immunity, at least insofar as the Act creates a private cause of action against the States for conduct that violates both the ADA and the Fourteenth Amendment.  United States v. Georgia, 546 U.S. 151, 159 (2006); Black v. Wigington, 811 F.3d 1259, 1269–70 (11th Cir. 2016).  The Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment and the First Amendment's protection against retaliation for protected speech and applies them to State and local governments.  Gitlow v. New York, 268 U.S. 652, 666 (1925); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463 (1947); Foley v. Orange County, 638 F. App'x 941, 945 (11th Cir. 2016) (per curiam) ("The First Amendment applies to state and local governments by its incorporation through the Due Process Clause of the Fourteenth Amendment.")  Thus, in order for Plaintiff to successfully state a statutory ADA claim against Defendant GDC for monetary damages, he must also successfully state a predicate constitutional claim against one of the individual Defendants, as agents of the GDC, in their

official or individual capacities. <u>Miller v. King</u>, 384 F.3d 1248, 1264 n.16 (11th Cir. 2004), *vacated and superseded on other grounds*, 449 F.3d 1149 (11th Cir. 2006).

Nevertheless, immunity does not shield the GDC from Plaintiff's ADA claims seeking declaratory and injunctive relief, irrespective of whether the challenged conduct also established a constitutional violation.[22] <u>Id.</u> at 1263–65 (applying the <u>Ex Parte Young</u> doctrine and holding that "the Eleventh Amendment does not bar ADA suits under Title II for prospective injunctive relief against state officials in their official capacities.");[23] <u>Lonergan</u>, 623 F. App'x at 992 (plaintiff properly sought declaratory and injunctive relief against the Secretary of the Florida Department of Prisons). As such, Plaintiff need only establish the elements of an ADA Title II claim, noted above, in order to obtain declaratory or injunctive relief.

Defendants contend Plaintiff's ADA claims fail because he does not allege the requisite elements of an ADA Title II claim, specifically the second and third elements, and because the GDC is immune from ADA Title II damages claims under the Eleventh Amendment. (Doc. 41-1, p. 28.) Although Plaintiff does not lay out the required elements of an ADA Title II claim in precise fashion or in the language contemplated by the law in his *pro se* Complaint, he does allege sufficient facts to plausibly state such a claim.

Contrary to Defendants' contentions, Plaintiff plausibly alleges that he is a disabled individual, because he noted that he must use a walker and that he had an aura change and

---

[22]  Although the Supreme Court expressly left open the question of whether Congress validly abrogated sovereign immunity for conduct that violates Title II but does not violate the Fourteenth Amendment, <u>United States v. Georgia</u>, 546 U.S. at 159, the Eleventh Circuit held that sovereign immunity still protects defendants sued in their official capacity from monetary liability for conduct that violates Title II but does not rise to the level of a constitutional violation. <u>Redding v. Georgia</u>, 557 F. App'x 840, 845 (11th Cir. 2014).

[23]  In <u>Ex parte Young</u>, 209 U.S. 123, 148–150 (1908), the Supreme Court held that federal courts are not barred by Eleventh Amendment sovereign immunity from enjoining state officers from acting unconstitutionally or contrary to other federal law.

seizure when Officer Defendants made him walk without it.[24]  (Doc. 1, pp. 5–7.)  Under 42 U.S.C. § 12102(1)(A), a "disability" includes a physical impairment that "substantially limits one or more major life activities" *including "walking."*  That Plaintiff must use a walker to ambulate and suffers aura changes and seizures when walking without it thus establish he is disabled as contemplated by the ADA.  Plaintiff also claims he was forced to stay inside the building to avoid walking on the unsafe walkway and that GDC agents have forced him to use the unsafe walkway, in violation of the ADA and as a form of retaliation.  (Id. at p. 6.)  A reasonable inference may be drawn from these allegations that Plaintiff was "excluded from participation in" the GDC's outdoor recreation activities at WSP "by reason of his disability," and that the GDC failed to provide him with a reasonable modification.  Further, Plaintiff claims that he has injured his hand from falling while walking on the unsafe walkway and that he received no medical care after his seizure.  (Id. at pp. 5, 6.)  The combined effect of these allegations supports an inference that Defendant GDC has failed to accommodate Plaintiff's walking disability by, among other things, failing to provide him medical care and providing unsafe walking areas that he cannot traverse without falling.

In light of the Court's discussion finding that Plaintiff has plausibly alleged Eighth and First Amendment constitutional claims regarding the unsafe walkway, *supra*, Sections III. D & E, Defendants' argument that Eleventh Amendment sovereign immunity protects the GDC from Plaintiff's damages claim does not stand.  As previously discussed, the allegations in Plaintiff's

---

[24]  Defendants cite to several cases and regulations that precede the ADA Amendments Act of 2008, which aimed to broaden the protections of the ADA, and are no longer good law.  See 42 U.S.C. § 12101 (2017) (findings and purposes of Pub. L. No. 110-325); see also Amendment of Americans With Disabilities Act Title II and Title III Regulations to Implement ADA Amendments Act of 2008, 81 Fed. Reg. 53,204 (August 11, 2016) (to be codified at 28 C.F.R. pts. 35, 36) ("In response to earlier Supreme Court decisions that significantly narrowed the application of the definition of 'disability' under the ADA, Congress enacted the ADA Amendments Act to restore the understanding that the definition of 'disability' shall be broadly construed and applied without extensive analysis.").

Complaint set forth plausible constitutional claims against agents of the GDC regarding the unsafe walkway. Accordingly, the Court should **DENY** this portion of Defendants' Motion to Dismiss as to Defendant GDC.

However, in light of Plaintiff being moved from WSP to GSP, (doc. 59), the Court should **DISMISS as moot** his ADA claims against Defendant GDC for injunctive relief regarding the unsafe walkway at WSP. Friends of Everglades, 570 F.3d at 1216 (internal quotation marks omitted) ("An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."); see Wahl, 773 F.2d at 1173–74 (finding prisoner's conditions of confinement claim for injunctive relief moot because he was transferred to a different facility during the course of litigation).

## V. Qualified Immunity

Defendants invoke the doctrine of qualified immunity in their Motion to Dismiss. They argue that they are entitled to the qualified immunity defense as to Plaintiff's Eighth and First Amendment claims.[25] (Doc. 41-1, p. 34.) Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation[.]" Lee, 284 F.3d at 1194. "Qualified immunity should be applied at the earliest possible stage of litigation, and it is therefore appropriate to decide its applicability on a

---

[25] As previously noted, Defendants do not assert qualified immunity with respect to Plaintiff's excessive force claims against Defendants Nunn and Kicklighter. (Doc. 41-1, p. 34 n.22.) Further, Defendants do not assert this defense with respect to Defendant GDC and instead assert sovereign immunity. (Doc. 41-1, p. 28.)

motion to dismiss. Often however, this is not possible, and for this reason it is more typically addressed at summary judgment." Horn v. Jones, No. 14-20341-CIV, 2015 WL 3607012, at *6 (S.D. Fla. May 8, 2015); see also Marshall v. Fla. Dep't of Corr., No. 10-20101-cv, 2011 WL 1303213, at *4 (S.D. Fla. March 31, 2011) ("[W]here it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation.*") (emphasis in original) (citation omitted).

This defense "reflects an effort to balance 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Jones v. Fransen, 857 F.3d 843, 850–51 (11th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" Id. at 851 (quoting Keating, 598 F.3d at 762 (quotation marks and brackets omitted)).

"As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Id. (quoting Lee, 284 F.3d at 1194). However, "the doctrine's protections do not extend to one who 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" Id. (quoting Harlow, 457 U.S. at 815 (internal quotation marks and alteration omitted)). Additionally, "[b]ecause qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing

discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." Ratliff v. DeKalb County, 62 F.3d 338, 340 n.4 (11th Cir. 1995).

To receive qualified immunity, Defendants must first establish that they were acting within their discretionary authority during the events in question. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Here, Plaintiff does not contest this issue, and it appears that Defendants were acting within their respective discretionary authorities when removing Plaintiff from his cell, making decisions relevant to Plaintiff's medical treatment, and directing him to use the unsafe walkway. Thus, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity. Id. at 1358. To make this showing, Plaintiff must first establish the violation of a constitutional right on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001); Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013). As explained in Section III above, Plaintiff has alleged conduct by Defendants Nunn, Kicklighter, Brad, Gramiak, and Johnson that, if proven true, plausibly establishes a violation of Plaintiff's Eighth Amendment rights. Likewise, as explained in Section III, Plaintiff has plausibly alleged a violation of his First Amendment rights by Defendants Gramiak and Johnson. Consequently, Plaintiff satisfies the first qualified immunity prong.

Having alleged a constitutional violation, Plaintiff must next demonstrate that the constitutional right was clearly established at the time of the alleged misconduct. Saucier, 533 U.S. at 200.[26] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202; Wilson v. Layne, 526 U.S. 603, 615 (1999). "The 'very

---

[26] The Supreme Court has clarified, however, that courts need not analyze these qualified immunity steps sequentially. Pearson, 555 U.S. at 236.

action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law." Harris v. Coweta County, 21 F.3d 388, 393 (1994) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To determine "whether the law clearly established the relevant conduct as a constitutional violation at the time that Defendant Officers engaged in the challenged acts," the defendants must have had "fair warning" that their conduct violated a constitutional right. Fransen, 857 F.3d at 851 (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (citations and quotation marks omitted)). "'Fair warning' comes in the form of binding caselaw from the Supreme Court, the Eleventh Circuit, or the highest court of the state . . . that 'make[s] it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates a federal law.'" Id. (brackets in original) (quoting Priester, 208 F.3d at 926 (citation omitted)).

"A plaintiff may demonstrate in any one of three ways that a defendant had 'fair warning' that the right he violated was clearly established." Id. at 852 (citing Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation and internal quotation marks omitted)). "First, a plaintiff may point to binding precedent that is materially similar." Id. (citing Loftus, 690 F.3d at 1204). "This method requires [the Court] to consider 'whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case.'" Id. (quoting Loftus, 690 F.3d at 1204). "Second, a plaintiff may invoke a 'broader, clearly established principle' that he asserts 'should control the novel facts [of the] situation.'" Id. (quoting Loftus, 690 F.3d at 1204–05 (citation and internal quotation marks omitted)). "Because 'fair warning' is the driving force behind a determination that a right has been clearly established, when a plaintiff proceeds in this way, he must show that case law demonstrated the principle with 'obvious clarity . . . so that every objectively reasonable

government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" Id. (quoting Loftus, 690 F.3d at 1205 (citation and internal quotation marks omitted)). "The violation of a right may also fall into this category when '[t]he reasoning, though not the holding of prior cases . . . send[s] the same message to reasonable officers in novel factual situations.'" Id. (quoting Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005) (citation and internal quotation marks omitted)).

"Finally, a right is 'clearly established' when the defendant's conduct 'lies so obviously at the very core of what the [constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" Id. (quoting Loftus, 690 F.3d at 1205 (citation and internal quotation marks omitted)). Courts "recognize the obvious-clarity exception where conduct is 'so bad that case law is not needed to establish that the conduct cannot be lawful.'" Id. (quoting Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002)). "[T]his category [is] 'narrow.'" Id. (citing Priester, 208 F.3d at 926–27.) Using these standards, the Court will determine whether Plaintiff's rights under the Eighth and First Amendments were "clearly established" such that Defendants are not entitled to qualified immunity.

### A.    Eighth Amendment Failure to Intervene Claim Against Defendant Brad

As discussed above, Plaintiff plausibly states a claim that Defendant Brad failed to intervene when Defendants Nunn and Kicklighter assaulted Plaintiff in medical. Thus, the Court must determine whether Plaintiff's right to intervention from the nurse standing nearby was "clearly established" at the time Defendant Brad failed to intervene on Plaintiff's behalf. Plaintiff has not pointed to, and the Court is not aware of, any binding precedent holding that a non-law enforcement officer, prison employee has a duty to intervene to halt the excessive force

of other officers.  Although Eleventh Circuit precedent clearly establishes a prisoner's right to excessive force intervention from other *officers*, <u>Priester</u>, 208 F.3d at 924, no relevant case law has extended this this right to non-officer employees, such as Defendant Brad.  Furthermore, albeit in a case with dissimilar facts, the Eleventh Circuit held that the duty to intervene in a law enforcement officer's unconstitutional conduct does not extend to non-law enforcement officers. <u>Wilson v. Strong</u>, 156 F.3d 1131, 1134–35 (11th Cir. 1998) (granting qualified immunity to an animal control officer who failed to intervene in a law enforcement officer's unconstitutional arrest because such a duty was not clearly established as to the non-law enforcement officer). On that account, binding precedent indicates Defendant Brad did not violate "clearly established" federal law.

The Court recognizes the serious nature of Plaintiff's allegations concerning Defendant Brad's alleged inaction, but, given the holding in <u>Wilson</u> and the current Circuit split regarding whether non-officer prison employees have a duty to intervene in the excessive force committed by officer employees, the Court also finds that this is not an "obvious clarity" case.  <u>Compare</u> <u>Durham</u>, 97 F.3d at 868 ("[T]he precedent holding police officers and correctional officers liable for failure to intervene was sufficient to place the nurse . . . on notice that she had a duty to protect [the] plaintiff while under her charge[.]"), <u>with</u> <u>Ali v. McAnany</u>, 262 F. App'x 443, 446 (3d Cir. 2008) ("The [Eighth Amendment] claim against [the nurse defendant] is also subject to dismissal because she is not corrections officer and thus did not have a duty to intervene . . . ."). When there exists a Circuit split on this exact issue and where related Eleventh Circuit precedent militates toward granting qualified immunity, an "obvious clarity" case does not lie.

Accordingly, the Court should **GRANT** this portion of Defendants' Motion to Dismiss as

to Defendant Brad and **DISMISS** Plaintiff's failure to intervene claim alleged against him based on a qualified immunity defense.

> **B.** **Eighth Amendment Deliberate Indifference to Serious Medical Needs Claims Against Defendants Nunn, Kicklighter, and Brad**

Viewed generally, Plaintiff plausibly alleges that Defendants Nunn, Kicklighter, and Brad were deliberately indifferent to his serious medical needs following the alleged assault of Plaintiff by Defendants Nunn and Kicklighter in Defendant Brad's presence. It has been well-established for at least forty years that deliberate indifference to a prisoner's serious illness or injury constitutes cruel and unusual punishment, in violation of Eighth Amendment. Estelle, 429 U.S. at 104–05. More specifically, Plaintiff alleges that, after he suffered a seizure and the assault, these Defendants completely denied him any medical care in the face of bruising throughout his body and him being soiled with blood, urine, and feces; instead, they sent him to a holding cell where he was shackled for two hours. The Eleventh Circuit has long held that "delay in treatment of serious and painful injuries" rises to the level of a constitutional claim. Coweta County, 21 F.3d at 393. Here, Plaintiff's allegations show that care was not merely delayed, it was entirely denied.

As set forth above, Plaintiff has alleged that he received no medical care following his seizure and the assault, which left him in an obviously injured state. Thus, the nature of Plaintiff's alleged injuries and of Defendants' non-response is quite serious. Simply put, delaying treatment of serious medical needs indefinitely, indeed entirely denying any medical treatment or assessment whatsoever, rises to the level of a constitutional violation of which a reasonable officer or nurse would be aware. The Eleventh Circuit has concluded that "[a] complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference." Bingham, 654 F.3d at 1176 (citing Coweta County, 21 F.3d at 393).

Likewise, "when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989)).

In this case, Plaintiff has plausibly alleged that Defendants Nunn, Kicklighter, and Brad knew of his serious need for medical care yet provided none in response to this knowledge. Long before these Defendants allegedly refused Plaintiff medical care after he suffered a seizure and was assaulted, "it was clearly established that knowledge of the need for medical care and [an] intentional refusal to provide that care constituted deliberate indifference." Coweta County, 21 F.3d at 393 (citation omitted); see also Carswell v. Bay County, 854 F.2d 454 (11th Cir 1988) (same). Therefore, Eleventh Circuit precedent puts reasonable prison nurses and officers on notice that they violate an inmate's Eighth Amendment rights by totally denying an inmate necessary medical care.

The Court is not concluding today that these Defendants in fact violated Plaintiff's Eighth Amendment rights. On the record before the Court, we cannot know. However, if the Court accepts Plaintiff's factual allegations as true, as it must, then the alleged inaction of these Defendants was, "in the light of the preexisting law—beyond what the Constitution would allow under the circumstances." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1317 (11th Cir. 2010). Consequently, the Court should **DENY** this portion of Defendants' Motion, as Defendants Nunn, Kickligher, and Brad are not entitled to the dismissal of Plaintiff's deliberate indifference to serious medical needs claims against them on the basis of qualified immunity.

### C. Eighth Amendment Deliberate Indifference to Health and Safety Claims Against Defendants Gramiak and Johnson

As discussed above, Plaintiff plausibly alleges Defendants Gramiak and Johnson were deliberately indifferent to his health and safety when they ignored his concerns about the

allegedly unsafe walkway and the dangers it posed in light of Plaintiff's disability. Plaintiff avers that Defendants Gramiak and Johnson did nothing in response to his pleas for help with other officers who forced him to use the unsafe walkway, allegedly in retaliation for filing grievances, which caused him to fall and injure himself. Because materially similar binding precedent does not exist to show Defendants Gramiak and Johnson violated Plaintiff's clearly established rights in the factual scenario alleged, the Court must determine whether this claim meets either of the "obvious clarity" exceptions. In this case, the Court finds the inaction of Defendants Gramiak and Johnson in the face of Plaintiff's pleas for help with the unsafe walkway does not lie "at the very core of what the [Eighth Amendment] prohibits," such that the unlawfulness of their conduct was "readily apparent . . . notwithstanding the lack of case law." Therefore, Plaintiff must point to a "broader, clearly established principle [that] should control the novel facts" of his situation, and he must "show that case law demonstrated [that] principle with obvious clarity."

To show Defendants Gramiak and Johnson had "fair warning" that their inaction violated "clearly established" federal law, Plaintiff, a disabled prisoner, can point to the "broader, clearly established principle" that disabled persons, including prisoners, are entitled to reasonable accommodations and are protected from discrimination under Title II of the ADA and subsequent cases interpreting that landmark legislation. 42 U.S.C. §§ 12131(2), 12132; Tennessee v. Lane, 541 U.S. 509, 532 (2004) (recognizing the duty to accommodate and noting that Title II requires "reasonable modifications"). Congress passed the ADA in 1990, and since 1998, reasonable prison officials should have been aware that their facilities are subject to and their inmates protected by ADA Title II. Yeskey, 524 U.S. at 209–10 (1998) ("[T]he statute's language unmistakably includes State prisons and prisoners within its coverage."). Furthermore,

it is beyond dispute that the Eighth Amendment establishes a clear principle protecting inmates from deliberate indifference to unsafe prison conditions that pose a substantial risk of serious harm. See, e.g., Marsh, 268 F.3d at 1028–29 (citations omitted); see also United States v. Georgia, 546 U.S. at 157 ("In fact, it is quite plausible that the alleged deliberate refusal of prison officials to accommodate Goodman's disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted [discrimination under the ADA and a violation of the Eighth Amendment].") (citations omitted).

Regulations passed pursuant to the ADA generally require prisons to make reasonable modifications to their policies to avoid discrimination, 28 C.F.R. § 35.130(b)(7), and require prisons to ensure existing facilities are readily accessible and useable by disabled prisoners, 28 C.F.R. § 35.150(a).[27] The ADA's mandates in this regard are not daunting. Prisons can comply with the accessibility requirement by "assign[ing] aides to beneficiaries," among other things. 28 C.F.R. § 35.150(b). What prisons, and in this case, prison officials being sued under Section 1983, cannot do is outright ignore the accommodation needs of disabled prisoners. Federal law is abundantly clear in this respect. Moreover, the Eleventh Circuit has expressly held that prisons which fail to reasonably accommodate disabled prisoners violate the ADA. Lonergan, 623 F. App'x at 992 (citing Schwarz, 544 F.3d at 1212 n.6).

In addition, Eleventh Circuit precedent applying the Eighth Amendment gives further notice of the "clearly established principle" codified in the ADA that failing to provide reasonable accommodations to disabled prisoners can amount to a constitutional violation. See

---

[27] See 42 U.S.C. § 12134 (mandating regulations be promulgated to implement Title II); see also 28 C.F.R. § 35.152(b)(1) ("Public entities shall ensure that qualified *inmates* or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.") (emphasis added).

Gilmore, 738 F.3d at 273–77 (holding that denial of hearing aid batteries can state a claim for deliberate indifference); Farrow, 320 F. 3d at 1243–48 (holding that denial of dentures and other dental care can state a claim for deliberate indifference); Newman v. Alabama, 503 F.2d 1320, 1328–31 (5th Cir. 1974) (holding that denial of eyeglasses and prostheses can state a claim for deliberate indifference);[28] see also Evans v. Dugger, 908 F.2d 801, 805 n.8, 806 (upholding challenged jury instructions which stated that deliberate indifference under the Eighth Amendment can be evidenced by prison officials' refusal to provide "safe and handicapped accessible housing," by their provision of only "cursory" modifications or accommodations to handicapped inmates, or by their ignoring the need for "handicapped accessible housing" as punishment). These cases, along with the statutory and regulatory provisions of the ADA, combine to make clear that Defendants Gramiak and Johnson had notice that their alleged treatment of Plaintiff was unlawful.

Therefore, Congress' pronouncement in the ADA that disabled prisoners are entitled to reasonable accommodations and protection from discrimination, as applied and construed in Yeskey, Lane, Lonergan, and ensuing regulations, created a "broader, clearly established principle" that should control the novel facts of Plaintiff's Eighth Amendment claim.[29] These cases demonstrate with "obvious clarity" that total apathy in the face of a disabled prisoner's

---

[28] All decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[29] While the Court primarily rests its qualified immunity analysis on the clearly established principle announced in the ADA and its progeny of cases, the Court has already determined Plaintiff's allegations which implicate the ADA also give rise to an Eighth Amendment claim, *supra*, Section III.D. Eleventh Circuit precedent recognizes that certain conduct by prison officials can violate both the Eighth Amendment and the ADA. Miller v. King, 449 F.3d 1149, 1151 (11th Cir. 2006) (per curiam). Moreover, because some conduct which violates the ADA does not amount to a constitutional violation, id., the ADA's "fair warning" as to what conduct is unlawful establishes a more stringent threshold than the Eighth Amendment alone. Thus, Defendants Gramiak and Johnson had a heightened warning that if heeded would have necessarily precluded the alleged constitutional violation at issue.

need for a reasonable accommodation is a violation of federal law. In sum, Defendants Gramiak and Johnson are not entitled to qualified immunity at this juncture because the preceding law provided "fair warning" to them that their conduct, as Plaintiff describes it, during Plaintiff's incarceration at WSP violated his clearly established statutory rights as a disabled prisoner. See Harlow, 457 U.S. at 818 (qualified immunity does not protect officials who violate "clearly established *statutory* or constitutional rights of which a reasonable person would have known") (emphasis added); see also Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (where no directly on point case exists "precedent must have placed the *statutory* or constitutional question beyond debate.").

Here there can be no debate. Federal law clearly establishes a disabled prisoner's right to be afforded reasonable accommodations and to be protected from discrimination. It plainly follows, as it must, that Defendants Gramiak and Johnson's complete disregard for Plaintiff's pleas for assistance with the unsafe walkway violated his "clearly established" rights. Even so, the Court is not concluding today that these Defendants in fact violated Plaintiff's Eighth Amendment rights. On the record before the Court, we cannot know. However, if the Court accepts Plaintiff's factual allegations as true, as it must, then the alleged apathy of these Defendants to Plaintiff's need for accommodation as a disabled prisoner was, "in the light of the preexisting law—beyond what the Constitution would allow under the circumstances." Pourmoghani-Esfahani, 625 F.3d at 1317. Consequently, the Court should **DENY** this portion of Defendants' Motion, as Defendants Gramiak and Johnson are not entitled to the dismissal of Plaintiff's deliberate indifference to health and safety claims against them on the basis of qualified immunity.

### D. First Amendment Failure to Stop Claim Against Defendants Gramiak and Johnson

Under the facts alleged in Plaintiff's Complaint, Defendants Gramiak and Johnson plausibly violated Plaintiff's First Amendment rights when they ignored his pleas for help with the retaliation he suffered at the hand of other officers. Defendants argue they are entitled to qualified immunity. Although relevant Eleventh Circuit precedent holds that the failure to stop unlawful acts in violation of the First Amendment violates clearly established law, no binding case involves a factual scenario materially similar to the one here. Thus, the Court must determine whether existing "caselaw demonstrates the [unconstitutionality of Defendants' actions] with 'obvious clarity . . . so that every objectively reasonable government official . . . [would have] know[n] that the official's conduct did violate federal law when the official acted.'" Fransen, 857 F.3d at 851 (quoting Loftus, 690 F.3d at 1205 (citation and internal quotation marks omitted)). It appears two Eleventh Circuit cases could have informed Defendants Gramiak and Johnson whether their actions comported with the First Amendment: Keating v. City of Miami, 598 F.3d 753 (11th Cir. 2010), and Douglas v. Yates, 535 F.3d 1316 (11th Cir. 2008).

In Keating, supervisory officers authorized subordinate officers to discharge a variety of weapons at unarmed protestors and then later declined to exercise their supervisory authority to prevent the subordinates from doing so. 598 F.3d at 763–65. The Eleventh Circuit held the failure by supervisory officers to stop subordinates from engaging in conduct which violated the First Amendment "also violated the [p]rotestors' First Amendment rights." Id. at 765. Because the supervisory officers knew that their subordinates would engage in unlawful conduct—they initially directed it—their "fail[ure] to stop such action in their supervisory capacity" established a First Amendment violation. Id. The Eleventh Circuit then held that the supervisory officers

were not entitled to qualified immunity on the protestors' First Amendment claim, under a theory of supervisory liability, for failing to stop the unlawful actions of others. Id. at 767. The Keating Court explained that the protestors' alleged conduct of "assembling, peacefully demonstrating, and protesting" were "expressive activities squarely protected by the First Amendment." Id. (citing Amnesty Int'l v. Battle, 559 F.3d 1170, 1187 (11th Cir. 2009)). Thus, the supervisory officers violated clearly established law because "a broader, clearly established principle, that peaceful demonstrators have a First Amendment right to engage in expressive activities, should control the novel facts in this situation." Id. (citing Mercado, 407 F.3d at 1159). The Court reasoned that "it should have been obvious" to the supervisory officers that failing to stop the unlawful conduct would violate the First Amendment. Id. In essence, Keating clearly establishes that a supervising officer who fails to stop known First Amendment violations of subordinate officers also violates the First Amendment.

Likewise, in Douglas, the Eleventh Circuit stated, "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." 535 F.3d at 1321 (quoting Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006)). After filing a grievance, the prisoner-plaintiff in Douglas alleged he faced, *inter alia*, mental abuse, harassment, and verbal threats of injury and more severe conditions of confinement from unnamed officers. Id. Finding these allegations to generally state a plausible retaliation claim, the Court held that Yates, a supervisory defendant, could be held liable as a supervisor because the prisoner alleged that his family had notified Yates of the ongoing retaliatory conduct, yet he failed to stop it. Id. at 1322. "These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop

them from doing so." Id.  Thus, Douglas reaffirms that filing a grievance is a protected First Amendment activity and clearly shows that a supervisor can be held liable for failing to stop subordinate officers who run afoul of the First Amendment by engaging in retaliation.

Taken together, these cases show that, under Plaintiff's version of events, Defendants Gramiak and Johnson violated clearly established law of which a reasonable warden and deputy warden would have been aware of at the time in question.  Keating establishes the principle that supervisory defendants can be held liable for the First Amendment violations of subordinate officers when they know of the constitutionally unlawful conduct but fail to stop it.  In turn, Douglas establishes that retaliation for filing grievances is itself a constitutional violation because, like protesting, grievance filing is an activity protected by the First Amendment; it also clearly establishes that supervisors can be held liable for failing to stop the retaliation of subordinate officers.  Like the family in Douglas, Plaintiff here alleged that he pleaded with these Defendants for help against other prison officials' retaliation, yet none came.  Thus, the facts of the present case are in line with Douglas and illustrate the constitutional principle of Keating that a supervisory officer's knowing failure to stop conduct which violates the First Amendment is itself a First Amendment violation.  As a result, both Douglas and Keating provided Defendants Gramiak and Johnson with "fair notice" that their inaction in the face of known retaliation, as alleged by Plaintiff and construed in his favor, as it must be at this this stage, violated clearly established law.

Therefore, at this stage of litigation, Defendants Gramiak and Johnson are not protected by the qualified immunity defense as to Plaintiff's First Amendment failure to stop claim. Accordingly, the Court should **DENY** this portion of Defendants' Motion.

## VI.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis.*[30]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

---

[30]  A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action.  See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

# CONCLUSION

For the reasons and in the manner set forth above, the Court **DENIES** Plaintiff's second and third Motion to Supplement his Complaint, (docs. 25, 30). I **RECOMMEND** the Court **DISMISS as moot** all claims for injunctive relief as to Plaintiff's unsafe walkway allegations. Further, I **RECOMMEND** that the Court **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss, (doc. 41). I also **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis* as to the dismissed claims.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 20th day of March, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA